# FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Vincent P. Alexis
_____

(Enter above the full name of the plaintiff in this action)

COMPLAINT

V.

Sessions, Inch, Samuels, Carvajal, Smith,
_____

Santana, Schult, Connors, Norwood,
_____

Hollingsworth, Ortiz, Travers, Wilk,
_____

Newland, Scod, Syjongtian, Tyas, Mello,
_____

Hoey, St. Francis Medical Ctr.
_____

Civil Action No. _____

(To be supplied by the Clerk of the Court)

**RECEIVED**

FEB 14 2018

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## INSTRUCTIONS; READ CAREFULLY

1.   This complaint must be legibly handwritten or typewritten, signed by the plaintiff and   subscribed to under penalty of perjury as being true and correct.  All questions must be answered concisely in the proper space on the form.  Where more space is needed to answer any question, attach a separate sheet.

2.   In accordance with Rule 8 of the Federal Rules of Civil Procedure, the complaint should contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3.   You must provide the full name of each defendant or defendants and where they can be found.

4.   You must send the original and one copy of the complaint to the Clerk of the District Court.  You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendants.

5.   Upon receipt of a fee of $400.00 (a filing fee of $350.00, and an administrative fee of   $50.00), your complaint will be filed.  You will be responsible for service of a separate summons and copy of the complaint on each defendant.  See Rule 4, Federal Rule of Civil Procedure.

6.    If you cannot prepay the $400.00 fee, you may request permission to proceed in forma pauperis in accordance with the procedures set forth in the application to proceed in forma pauperis.  See 28 U.S.C. §1915.  (If there is more than one plaintiff, each plaintiff must separately request permission to proceed in forma pauperis.)

7.    If you are given permission to proceed in forma pauperis, the $50.00 Administrative Fee will not be assessed.  The Clerk will prepare and issue a copy of the summons for each defendant.  The copies of summonses and the copies of the complaint  which you have submitted will be forwarded  by the Clerk to the United States Marshal, who is responsible for service.  The Marshal has USM-285 forms you must complete so that the Marshal can locate and serve each defendant.  If the forms are sent to you, you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

1a.   Jurisdiction is asserted pursuant to (CHECK ONE)

      ____   42 U.S.C. §1983 (applies to state prisoners)

      X   Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and 28 U.S.C. § 1331 (applies to federal prisoners)

If you want to assert jurisdiction under different or additional statutes, list these below:

CIVIL RICO 18 U.S.C. §§1961-1967, & 28 U.S.C. §1331 (Federal

                                                                  Question)

1b.   Indicate whether you are a prisoner or other confined person as follows:

___ Pretrial detainee

___ Civilly-committed detainee

___ Immigration detainee

___ Convicted and sentenced state prisoner

X Convicted and sentenced federal prisoner

___ Other: (please explain)_____

2.  Previously Dismissed Federal Civil Actions or Appeals

If you are proceeding in forma pauperis, list each civil action or appeal you have brought in a federal court while you were incarcerated or detained in any facility, that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted. Please note that a prisoner who has on three or more prior occasions, while detained in any facility, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, will be denied in forma pauperis status unless that prisoner is under imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

a.  Parties to previous lawsuit:

Plaintiff(s): _____

_____

Defendant(s):_____

_____

b.  Court and docket number:_____

c.  Grounds for dismissal: (  )  frivolous   (  ) malicious

(  )  failure to state a claim upon which relief may be granted

d.  Approximate date of filing lawsuit:_____

e.  Approximate date of disposition:_____

If there is more than one civil action or appeal, describe the additional civil actions or appeals using this same format on separate sheets.

3.  Place of Present Confinement?__FCI Fort Dix_____

4.  Parties

(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)

a.  Name of plaintiff:__Vincent P. Alexis_____

Address: FCI Ft. Dix, Box 2000, J.B. MDL, NJ 08640

Inmate#: 19213-052

b.    First defendant:

Name: Jeffrey Sessions

Official position: U.S. Attorney General

Place of employment: U.S. Dep't of Justice, Washington, DC

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Please see attached 57 page complaint for details.

c.    Second defendant:

Name: Mark S. Inch

Official position: Director, Federal Bureau of Prisons

Place of employment: U.S. Dep't of Justice, Washington, DC

How is this person involved in the case?

(i.e., what are you alleging that this person did or did not do that violated your constitutional rights?)

Please see attached 57 page complaint for details.

d.    If there are more than two defendants, attach a separate sheet. For each defendant specify: (1) name, (2) official position, (3) place of employment, and (4) involvement of the defendant.    Please see attached 57 page complaint for details (pages 3 through 11).

5.   I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

$\times$ Yes      ____No

If your answer is "Yes," briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

I completed the BP-8/BP-9/BP-10/BP-11 Administrative Remedy process (case # 802577-F1).  I also filed a Tort Claim (# TRT-NER-2018-00480) with the U.S. Dep't of Justice/BOP. Please see attached 57 page complaint (plus attached Exhibits).

If your answer is "No," briefly explain why administrative remedies were not exhausted.

_____

_____

_____

_____

6.   Statement of Claims

(State here as briefly as possible the facts of your case. Describe how each defendant violated your rights, giving dates and places. If you do not specify how each defendant violated your rights and the date(s) and place of the violations, your complaint may be dismissed. Include also the names of other persons who are involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach a separate sheet if necessary.)

In March of 2014, I became seriously ill while in BOP custody at FCI Fort Dix.  Because of the Defendant's actions & inactions, misdiagnosis & negligence, incompetence, and indifference, I've experienced an enormous amount of pain & suffering for the past 47 months.  I suffered irreparable harm & permanent injuries which continue to cause daily pain & suffering.  Please see attached 57 page complaint (plus attached 45 Exhibits) for

a detailed explanation of my claim.

7.    Relief

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

I am asking that the Court:
    - Order that the Defendants provide proper & timely medical/surgical care for Alexis.  This includes, but is not limited to, care for the Plaintiff's

proven Sinus Disease, Pulmonary Disease, & Chronic Lyme Disease. In addition, Order that Alexis continues to recheck with his surgeon (Dr. Undavia) on a regular basis, & is immediately scheduled to be examined by a Lyme Disease Specialist.

– Award Compensatory Damages in the amount of One Million Dollars against each Defendant.

– Award Punitive Damages against Defendants in the amount of One Million Dollars each.

8.    Do you request a jury or non-jury trial? (Check only one)

X Jury Trial ( ) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __8th__ day of __February__ , 20_1_ _8_

_____
Signature of plaintiff*

(*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT HERE. ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF. REMEMBER, EACH PLAINTIFF MUST SIGN THE COMPLAINT).

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| Vincent P. Alexis<br>**Plaintiff,**<br><br>v.<br><br>Jeffrey Sessions, U.S. Attorney General;<br>Mark S. Inch, Director BOP/DOJ;<br>Charles E. Samuels Jr., Director BOP/DOJ;<br>M.D. Carvajal, N.E. Regional Dir./BOP/DOJ;<br>Mr. Smith, Acting Warden FCI Fort Dix/BOP/DOJ;<br>Jose Santana, Director DSCC/BOP/DOJ;<br>Deborah Schult, Medical Director BOP/DOJ;<br>Ian Connors, Administrator BOP/DOJ;<br>J.L. Norwood, Regional Director BOP/DOJ;<br>Mr. Hollingsworth, Warden FCI Fort Dix/BOP/DOJ;<br>Mr. Ortiz, Warden FCI Fort Dix/BOP/DOJ;<br>G. Travers, Health Service Administrator FCI Ft. Dix;<br>J. Wilk, Health Service Administrator FCI Fort Dix;<br>Rolando Newland MD, Clinical Director FCI Fort Dix;<br>Ravi Sood MD;<br>Sam Syjongtian, MLP;<br>P. Tyas, NP-C;<br>Christina Mello, NP-BC;<br>T. Hoey, NREMT-P;<br>Saint Francis Medical Center;<br>John & Jane Does 1-20;<br>**Defendants.** | ) Civil #<br>) _____<br>)<br>) **Jury Trial**<br>)<br>) **Demand**<br>) 2/8/18<br>)<br>)<br>)<br>**RECEIVED**<br>)<br>) FEB 14 2018<br>)<br>) AT 8:30 _____M<br>) WILLIAM T. WALSH, CLERK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND MONETARY REFIEF UNDER BOTH BIVENS V. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS, 403 U.S. 388 (1971) & CIVIL RICO 18 U.S.C. §§1961-1967, & 28 U.S.C. §1331 (FEDERAL QUESTION)**

### I. Preliminary Statement

This is a Civil Rights Bivens Action/Complaint for Declaratory,

Injunctive and Monetary Relief under Bivens V. Six Unknown Named

Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) and

Civil RICO under 18 U.S.C.§§1961-1967, filed by Plaintiff: Vincent P.

Alexis, (hereinafter referred to as "Alexis") alleging violations

of his First Amendment's Freedom of Speech, Fifth Amendment's

Due Process & Access to the Courts as well as an Eighth Amendment's

Cruel & Unusual Punishment violations of the United States Constitution. Plaintiff: Alexis, seeks relief in the form of a Preliminary Injunction Ordering the Defendants: Sessions, Inch, Samuels, Carvajal, Smith, Santana, Schult, Connors, Norwood, Hollingsworth, Ortiz, Travers, Wilk, Newland, Sood, Syjongtian, Tyas, Mello, Hoey, & Saint Francis Medical Center, to perform corrective action and treat Alexis for his deemed by the Dep't of Justice's Defendants as a core Chronic Care Case & stipulate to the "Irreparable Harm" caused by failure to timely & properly treat his proven conditions. This instant Bivens Violations & Civil RICO violations started on March 19, 2014 and continued to the year of 2018, as the Public Records so suggests.

## II. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 (Federal Question) and 1343(a)(3). As well as under Statute 18 U.S.C.§§1961-1967 Civil RICO. A substantial part of events giving rise to the claims supra herein alleged occurred within the Federal Bureau of Prisons FCI Fort Dix, New Jersey, while Alexis was/is incarcerated there from March 5, 2014 until 2018, present date. In which the above specifically identified Defendants, supra facilitated violations of the 1st, 5th, 6th, & 8th Amendment's against Plaintiff: Alexis, by Defendants: Sessions, Inch Samuels, Carvajal, Smith, Santana, Connors, Norwood, Hollingsworth, Ortiz, Travers, Wilk, Newland, Sood, Syjongtian, Tyas, Mello, Hoey, Saint Francis Medical Center & John & Jane Does 1-20, without Due Process of Law in violations of the Fifth Amendment, within the

2

Federal Bureau of Prisons & elsewhere. Therefore venue proper in this District pursuant to 28 U.S.C.§1391(b), as Plaintiff: Alexis continues to suffer "irreparable harm."

### III. Parties

[1] **Plaintiff: Vincent P. Alexis**, 19213-052, is a Federal Prisoner currently being housed at FCI Fort Dix, P.O. Box 2000 Joint Base MDL, Fort Dix, New Jersey 08640, & is suing **Defendants: Sessions, Inch, Samuels, Carvajal, Smith, Santana, Schult, Connors, Norwood, Hollingsworth, Ortiz, Travers, Wilk, Newland, Sood, Syjongtian, Tyas, Mello, Hoey, Saint Francis Medical Center & John & Jane Does 1-20,** in their individual capacities under Bivens & under the Civil RICO Statute, and for violations of the 1st, 5th, 6th, & 8th Amendment's of the U.S. Constitution as seen supra & as follows.

[2] **Defendant: Jeff Sessions**, is the U.S. Attorney General within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Attorney General's Office/Dep't of Justice at: 950 Pennsylvania Avenue, N.W. Room 4400, Washington, D.C. 20530, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

3

[3]  **Defendant: Mark S. Inch**, is the Director of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[4]  **Defendant Charles E. Samuels Jr.**, is the former Director of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/ Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[5]  **Defendant M.D. Carvajal**, is a Regional Director of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, U.S. Customs House, 7th Floor, 2nd & Chestnut St., Philadelphia, PA 19106, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

4

[6]   **Defendant Smith**, is the Acting Warden/Assistant Warden of FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[7]   **Defendant Jose Santana**, is the Director DSCC of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dept of Justice, BOP, U.S. Armed Forces Reserve Complex, 346 Marine Forces Dr., Grand Praire, TX 75051, & is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[8]   **Defendant Deborah Schult**, is a Medical Director of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, and is being sued in her individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

5

[9]  **Defendant Ian Connors**, is an Administrator of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, & is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[10] **Defendant J.L. Norwood**, is a Regional Director of the BOP within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, U.S. Customs House, 7th Floor, 2nd & Chestnut St., Philadelphia, PA 19106, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[11] **Defendant Hollingsworth**, is the former Warden of FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

6

[12] **Defendant Ortiz**, is the Warden/former Warden of FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, & is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[13] **Defendant Travers**, is a Fort Dix Health Service Administrator within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[14] **Defendant Wilk**, is a Fort Dix Health Service Administrator within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

7

[15]   **Defendant Newland**, is a Medical Doctor & Clinical Director at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[16]   **Defendant Ravi Sood**, is a Medical Doctor at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[17]   **Defendant Sam Syjongtian**, is a Physician's Assistant (MLP) who was formerly employed at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: The U.S. Dep't of Justice, BOP, 320 First St. NW, Washington, DC 20534, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

8

[18]    **Defendant P. Tyas**, is a Physician's Assistant(NP-C) at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in her individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[19]    **Defendant Christina Mello**, is a Physician's Assistant (NP-BC) at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in her individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[20]    **Defendant T. Hoey**, is an EMT (NREMT-P) at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[21]    **Defendant Saint Francis Medical Center**, is a Trenton New Jersey Hospital & is served this Lawsuit/Complaint with Summons at: Saint Francis Medical Center, 601 Hamilton Ave, Trenton, NJ 08629, and is being sued under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[22]    **Defendant John Doe #1**, is a Lieutenant/Operations Lieutenant at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[23]    **Defendant John Doe #2**, is a Medical Doctor/Radiologist at the Saint Francis Medical Center & is served this Lawsuit/Complaint with Summons at: Saint Francis Medical Center, 601 Hamilton Ave, Trenton, NJ 08629, and is being sued in his individual capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

10

[24]    **Defendant John Doe #3**, is a Nurse at FCI Fort Dix within the U.S. Dep't of Justice & is served this Lawsuit/Complaint with Summons at: FCI Fort Dix, Box 38, J.B. MDL, NJ 08640, and is being sued under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

[25] **Defendants John & Jane Does # 4-20**, are currently unknown Defendants.  After a diligent discovery process their identities should be discovered, and once their identities are known Plaintiff will amend Complaint & serve this Complaint & Summons.  These Defendants are being sued under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons, without any transparent corresponding accountability.

11

[26]    **Plaintiff: Alexis's Request For A Preliminary**
**via: Fed.R.Civ.P. Rule 65(a)**
ORDERING the Defendants supra to treat him for his chronic medical
problems which caused Alexis core "irreparable harm" as the public
records so supports

("[A] Preliminary Injuction is always appropriate to grant inter-mediate relief of the same character as that which may be granted finally"). see also Capital Disrib. Servs, Ltd. v. Ducor Express Airlines, Inc., 440 F.Supp.2d 195, 209 (E.D.N.Y.2006)(citing Republic of the Philippines v. Marcos, 806 F.2d 344, 356 (2d Cir.1986).

[27]          **Preliminary Injunction Standards**

To obtain Preliminary Injunction Relief, Alexis, has clearly and concededly established: (1) irreparable harm in the absence of injunct-ive relief and;

(2) either (a) a likelihood of success on the merits or;
(b) sufficiently serious questions going to the merits to make them a fair ground for litigation & a balance of hardships tipping decidedly in the movants Alexis's favor."

See My-Web Grocer, LLC v. Hometown Info Inc., 375 F.3d 190, 192 (2d Cir.2004).

[28]          **Balance of Hardships**

Alexis having established irreparable harm being held unlawfully without being treated for his proven chronic medical condition by the Defendants, supra and others both known & unknown likelihood of success on his merits, Plaintiff: Alexis has also established that the balance of harships tips in his Alexis's favor as seen supra & infra see Background. Given the overwhelming evidence of FRAUD by the **Defendants supra,** this Court should find that the balance tips in Plaintiff: Alexis's favor. And the result of hardship on the Defendants would be minimal.

12

If the Preliminary Injunction is not ordered and conducted the amount of hardship on the Plaintiff: Alexis would be dramatically substantial. Thus, Alexis's request for an "Emergency Preliminary Injunction" be ORDERED, by this Honorable Court to prevent any further irreparable harm against Plaintiff: Alexis, as required under Fed.R.Civ.P. Rule 65(a) "Preliminary Injunction Relief."

[29]   **Defendants supra together with each other & those known & unknown to further their positions within "The RICO ENTERPRISE"**

From March 19, 2014, through current date January 2018 & after in furtherance of **The Enterprise.** See 18 U.S.C.§§1961-1967.

[30] This Civil Action is also under the Civil RICO Statutes via: 18 U.S.C.§§1961-1967. RICO is a powerful Statute that creates Criminal & Civil liabilities for a **Defendants's supra** & others known & unknown whom:

(i) "Person/Corporation/Defendants supra parties & others known & unknown" whom conducts the affairs of a distinct (ii) "enterprise" through a (iii) "Pattern (iv) of "racketeering" activity." See Background in support.

See Predicate Racjeteering Acts A-1 through A-3 supra & via: Background in support herein. See, e.g., Jennings v. Autometer Prods, Inc.,495 F.3d 466, 472-73 (7th Cir.2007) (Citing Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 481 (1985)). RICO's teeth are in Sections 1962(c) and 1962(d) which prohibits the above **Defendants** from conducting the affairs of an **Enterprise** through a pattern of racketeering activity see Background herein and from conspiring to violate RICO respectively. See **"The Enterprise"** supra & via: Background.

13

## Background

[31]  On **March 19, 2014** I became ill with a septic sinus infection. I went to the Fort Dix Medical Service for care.  Unfortunately, **Defendants Sood & Syjongtian** negligently failed to examine me, & I was sent back to my housing unit without medical treatment (Exhibit:EE).

[32]  On **March 20, 2014** I returned to the Ft. Dix Medical Service for care.  I was examined by L. DiMatteo, RN (Exhibit:E).  Nurse DiMatteo noted in the medical record that I had, "+1 Edema to R peri-orbit area.  Increased tenderness to palpation."  He also clearly comments that the "Plan of care was discussed with PCPT."  I was told to "Increase fluids, Tylenol/Motrin for pain, fever & discomfort, & will be placed on the call-out."  I was then sent back to my housing unit.

Approximately 2 hours later, as I sat in my room, I began to experience significant chest pain.  In addition, I became dyspnic & quickly experienced severe shortness of breath/light headedness. As I sat there, struggling to maintain consciousness, one of my room-ates ran downstairs & informed the unit officer of my crisis.  I was taken, on emergency, to the Ft. Dix Medical Service.  There, I was examined initially by **Defendant Syjongtian.**  He ran a number of EKG's

14

and took chest radiographs.  He also ordered paranasal sinus rad-iographs, which were to be taken the following day.  I was placed on oral antibiotics (Amoxicillin 500mg) & Acetaminophen.

**Defendant Syjongtian** reports in the medical record that he "Reviewed & EKG with PCPT MD."  Presumably, this is a typo, & he meant to report that he reviewed the EKG with PCPT MD - **Defendant Sood.**  I did, infact, witness him do this as I lay on the treatment bed.  But **Defendant Sood** then left the treatment room.  **Defendant Sood** negligently failed to examine me until approximately 3:40 PM, as he continued to see all of his regularly scheduled, routine, appointments.  When **Defendant Sood** finally did examine me, it was approaching 4 PM & all of his staff had left for the day.  Moreover, I had to be back in my housing unit for the 4 PM count.  **Defendant Sood** simply did not have any time to spend with me.

The soft tissue swelling/skin discoloration about my right eye was clearly visible early that morning.  And **Defendant Sood** knew that I had become more ill as the day went by - even briefly loosing consciousness as I sat in my housing unit just before my 9:30 AM crisis.

I was seriously ill & I knew it.  I asked **Defendant Sood** to send me to the hospital.  **Defendant Sood** refused to do so.

15

I was given no anti-inflammatories at all.  And I was again sent back to my housing unit after **Defendant Sood** informed me,

"It's nothing serious."

[33]  On **March 21, 2014** I again returned to the Ft. Dix Medical Service (Exhibit:F).  The infection had worsened significantly. It was becoming difficult for me to open my right eye due to the facial swelling/disfigurement.  **Defendant Sood** noted that I had, "Painful swelling with bluish discoloration of skin right maxilla extending to the nose & to the lower eyelid x2 days."  In addition, I was still experiencing chest pain & light headedness.  **Defendant Sood** also acknowledged this, noting in the medical record, "Atypical chest pain x2 days."

These clinical signs should have been alarming to any health care professional.  And when you also take into consideration the fact that I had momentarily lost consciousness in my room & that I was unable to walk unassisted from my housing unit to the Ft. Dix Medical Service the prior morning at 9:30, it should have been obvious that I was seriously ill.  Once again, I asked to be sent to the hospital.  And once again **Defendant Sood** refused to

16

send me to the hospital.  Despite the clear & obvious fact that my serious medical condition was rapidly becoming worse, & despite the fact that my clinical signs in no way pointed towards a diagnosis of acid reflux disease, **Defendant Sood** did diagnose me with Esophageal Reflux Disease (chronic), & he prescribed an acid-blocker (Ranitidine).  **Defendant Sood** told me that I needed,

> "Lifestyle changes, mindful awareness
> or meditation, & yoga."

**Defendant Sood** then sent me back to my housing unit, with no further treatment or diagnostics, negligently failing to do the sinus radiographs which were ordered from the previous day (those radiographs were not taken until **November 4, 2014** [Exhibits:F & M]). And when **Defendant Sood** sent me again back to my housing unit, he did so with the knowledge that the very next day was **Saturday,** & that Ft. Dix had no MD or PA on duty over the weekend.

17

[34] By Saturday March 22, 2014 my condition had become very serious. During the night I was unable to sleep. There was a fair amount of intermittant bleeding from my right nares, I was unable to open my right eye, & it was obvious to me that I was running a high fever. At approximately 4:00 AM, I went to the unit officer's office & knocked on the door. As I entered his office, I stated, "I need to go to the hospital." He took one look at me & exclaimed, "My God." He proceeded to pick up the phone & called Defendant John Doe #1, who negligently instructed me to go to the Ft. Dix Medical Service when they opened at 6:30 AM.

At approximately 6:45 AM on Saturday March 22, 2014 I was examined by an EMT. Once he saw me, he realized how ill I was, & called Defendant Sood & received authorization to send me to the hospital. I was finally sent to Defendant Saint Francis Medical Center (in Trenton, N.J.). Defendant John Doe #1 negligently failed to call an ambulance at 4:00 that morning. Instead, he sent me to the hospital ER by BOP van. Because of this delay, I didn't receive the aggressive treatment that I needed until approximately noon – a delay of approximately 7.5 hours.

18

[35] I was examined in the ER at approximately noon on **Saturday March 22, 2014.** I underwent a battery of diagnostic tests, including blood work, urinalysis, radiographs, CT scans, EKG's, & blood cultures. The chest radiographs revealed opacities/nodules in both of my lungs. And the blood cultures were positive for a dangerous bacteria - Staph Aureus. The ER physicians & specialists informed me that the Staph bacteria had showered my lungs with infection, and that the hematogenous spreading of the Staph was the cause of the acute chest pain & light headedness I experienced on the morning of **March 20, 2014. Defendant Sood** failed to realize this, he misdiagnosed my illness, & he failed to treat my serious illness in an appropriate & timely manner. As a result of **Defendant Sood's** gross negligence & treatment delays, the sepsis raged for over 48 hours, & irreparable harm had been done to my body.

[36] I was admitted to the hospital on the evening of **March 22, 2014.** I spent approximately 45 days there. Upon admission, I looked into the mirror in my room's bathroom. What I saw was horrifying - the facial disfigurement about my nose & right eye was so severe that I truly didn't recognize who I saw in the mirror.

19

Moreover, the swelling about my right eye was now causing significant involvement of the nerves/muscles that control the movements of the eye. Within days, I experienced pronounced double vision, as my right eye was unable to function normally.

In order to gain control over the sepsis & it's secondary effects, the hospital's physicians & Dr. Samir Undavia (an ENT specialist who's been treating me) recommended that I undergo sinus surgery, in order to establish drainage & remove the nidus for the infection.

[37] On **March 27, 2014** I had surgery on my right nasal sinus. Dr. Undavia performed this surgery. He clearly mentions in his surgery report (Exhibit:A) that there was "Tremendous inflammation & granulation tissue," & that "The case became very difficult given how much necrotic tissue was everywhere..." These pathologic changes indicate chronicity, & are a direct result of **Defendants Sood & John Doe's** negligence the week before.

[38] On **March 31, 2014** both of my lungs collapsed. The infection had eroded through the pleura, resulting in a bilateral pneumothorax.

20

Emergency chest tubes were placed, in an attempt to remove the air & abscess from the pleural space. **Defendant John Doe #2** negligently failed to position the chest tubes correctly. As a result, I underwent a second procedure to reposition both chest tubes. That procedure report (Exhibit:B) clearly states, "The bilateral chest tubes were pulled completely into the pleural space in the thoracic bases & then repositioned along the lateral aspect. On prior lateral imaging, the chest tubes were noted to be within the major fissures which limited their ability to fully evacuate the bilateral pneumothoraces." During the initial, emergency, placement of the chest tubes, the negligence of **Defendants John Doe #2 & Saint Francis Medical Center** resulted in a situation where the right pneumothorax/ abscess could not properly drain. As a result, the infection was now life-threatening, & I would have to undergo major thoracic surgery in order to fully evacuate the pneumothorax/abscess involving my right lung/thorax.

[39] On **April 7, 2014** I underwent a major thoracotomy and a blood transfusion (Exhibit:C). This became necessary because of the negligence & treatment delays committed by **Defendants Sood, John Doe #1, John Doe #2, & Saint Francis Medical Center**, as described above.

21

[40]   I was discharged from the hospital on May 5, 2014.

On **May 8, 2014 Defendant Sood** withheld the hospital discharge

instructions from me.  He negligently failed to provide me with

the Ferrous Gluconate (Iron) that was prescribed by the hospital,

even though I was still anemic (Exhibit:SS), and he failed to

provide me with the Sennosidas-Docusate Sodium (an anti-inflammatory

corticosteroid) that was prescribed by the hospital (Exhibit:P).

He did, however, continue to prescribe Ranitidine, which he had

placed me on approximately 50 days earlier when he misdiagnosed my

sepsis as Esophageal Reflux Disease - chronic.

In addition, upon review of my medical records from

**May 8, 2014** I noticed that **Defendant Sood** noted that I had,

"Arthroscopic ligament tear repair right knee 12/2012," and a

"History of concussion - unconsciousness x 3 days 04/2001 due to

MVA" (Exhibit:G).  Oddly, I've never had knee surgery & **Defendant**

**Sood** has never once examined my knee.  And I've never had a history

of concussions, or a period of unconsciousness, or a MVA in **April**

**of 2001.**  Defendant Sood was obviously concentrating on other issues

when I saw him  for my post-hospitalization exam & complained of

severe exercise intollerance, difficulty breathing from my right

22

nostril, nasal sinus pain, sinus headaches, & chest pain. Defendant Sood did schedule me for chest radiographs, however.

[41] On May 14, 2014 I had chest radiographs taken at the Ft. Dix Medical Service. Those radiographs revealed significant pathology. The radiology report, written by Charles White, MD (University of Maryland) states: "Abnormal. interval development of nodular densities in both mid and upper lung zones - ?infection, ?septic emboli, less likely metastases - rec further evaluation," (Exhibit:H). Defendant Sood negligently failed to do any further evaluation, despite the knowledge that on May 8, 2014, on my post-hospitalization exam, I complained of difficulty breathing from my right nostril, severe exercise intollerance, & chest pain (Exhibit:G).

[42] On June 21, 2014 I was forced to return to work at Ft. Dix. Defendant Sood failed to understand that I was still quite ill, & he refused to renew/extend my medical idle.

[43] At approximately 2 PM on June 25, 2014 I was at work when I began to experience severe right nasal pressure & pain. My boss,

23

CO Cusick, called over to the Ft. Dix Medical Service, and EMT Gibb instructed me to come right in.  Mr. Gibb (with a PA's authorization) placed me on a 14 day course of Amoxicillin.  Within hours of beginning the antibiotic, pus was draining from my right nares. And over those 14 days the sinus pain & pressure improved as pus, intermittantly, continued to drain from my right nares.

[44]  On **July 8, 2014** I went to Ft. Dix Medical Service's sick call.  I explained to Defendant John Doe #3 that I was out of anti- biotics.  I explained clearly that the treatment had helped, & that I still had pus draining intermittantly from the right nares. Defendant John Doe #3 did not refill the antibiotics & he/she failed to take action to ensure that **Defendant Sood** refilled the anti- biotics.  I was sent back to my housing unit, still ill, & told, "Look for a call-out."

[45]  That call-out occurred on **September 11, 2014,** two months later.  I was examined by **Defendant Tyas.**  She negligently failed to offer proper treatment/diagnostics.  **Defendant Tyas** sent me back to my housing unit & instructed me to "Buy a decongestant from commissary," (Exhibit:I).  Oddly, the Ft. Dix Commissary does not sell decongestants.

24

[46] On October 31, 2014 I saw Jose Ravago, MLP.   Mr. Ravago ordered radiographs of my chest & sinuses.   Those radiographs were taken on November 4, 2014.   The technician who took the radio-graphs let me view the sinus radiographs on the screen.   I was horrified by what I saw.   The right maxillary sinus was fully opacified (Exhibit:M).   There was no doubt about what I saw - I'm an experienced veterinarian, & I've viewed thousands of radiographs (including many radiographs of humans).   We were trained in school to compare what we were looking at with the "built in normal." So I immediately noticed the normal left side, & the clearly diseased right side.   At that moment, I knew that my condition was still very serious.   And I knew that I had to submit a BP-8 in order to receive proper medical care.

Mr. Ravago knew it was serious as well.   He immediately placed me on a potent antibiotic - Augmentin.

[47] On November 6, 2014 I submitted a BP-8 through my unit counselor (Exhibit:J).

[48] On November 10, 2014 I saw Defendant Sood.   Although he acknowledges in the medical notes that I "Had a course of anti-

25

biotics with some relief" (Exhibit:K), he negligently refused to refill the Augmentin which was prescribed by Mr. Ravago on **November 5, 2014.** An infection of the Maxillary sinus (which by nature will have a lot of boney involvement) of the severity & chronicity that afflicted my body, should be treated with long-term antibiotics. Instead of persuing aggressive treatment options, **Defendant Sood** said to me,

"There's nothing I can do."

[49] On **November 13, 2014** I went to sick-call in order to have the antibiotic refilled. I was unable to get the Augmentin refilled.

[50] On **November 14, 2014** I ran out of antibiotics. So on the following day, **November 15, 2014** I returned to medical. Once again, I was unable to get the Augmentin refilled.

[51] On **November 17, 2014** I received a response to the **BP-8** (Exhibit:J). **Defendant Travers** made no mention of **Defendant Sood's** treatment plan, & he failed to show any understanding of what I'd been through or was currently experiencing. The Ft. Dix Medical Service, & in particular **Defendant Sood,** was well aware of my concerns. They were made fully aware that when I blew my nose,

26

I still had blood & pus coming from the right nares.  And they were made fully aware that the drainage was intermittent, & quite often the drainage was back, into my naso-pharynx & not out of the nostril.  The nasal sinus radiographs taken on **November 4, 2014** showed conclusive evidence that my complaint(s) were genuine, & that my condition was still serious.  Nevertheless, I was negligently taken off antibiotics once again.

[52]   On **November 20, 2014** I submitted a BP-9 through my unit counselor (Exhibit:L).

[53]   On **November 25, 2014** I obtained a copy of the radiology report for the chest radiographs which were taken on **November 4, 2014** (see point 46 above).  That radiology report, written by Aletta Ann Frazier, MD (University of Maryland), clearly states, "Abnormal. resolved nodular opacities except for residual right apical opacity; cannot exclude residual infection; small residual bilateral pleural effusions" (Exhibit:M).  I was obviously very concerned to find out that there could still be residual infection present in my chest.  I was shocked to learn that both of my lungs were still plagued by pleural effusion.

27

Defendant Sood received this report on/about November 4, 2014. He was negligent in his duty because he never told me about these significant changes, despite the fact that I had consistently complained about chest pain & severe exercise intollerance/shortness of breath. I only found out about these results because I took the initiative & picked up a copy of Dr. Frazier's radiology report.

[54] On December 4, 2014 I was examined by Defendant Syjontian, MLP. I discussed my concerns (the radiographic changes Dr. Frazier mentioned in her radiology report, as well as the clinical ailments I've described) with Defendant Syjontian. He then said to me,

"I only have 18 months left, I don't care."
Defendant Syjontian negligently refused to offer any care for my obviously serious condition, and sent me back to my housing unit.

[55] On December 10, 2014 I was called to the Ft. Dix Medical Service. Defendant Travers informed me that I would "Have a CT scan done in 1 or 2 days." Defendants Sood, Travers, & Newland were negligent in their duty - this CT scan was not performed until January 22, 2015 (at RWJ University Hospital. Exhibit:N).

28

[56]  On December 13, 2014 I suffered prolonged bleeding from my right nares while in my housing unit.  After approximately 4 hours of intermittent bleeding, I informed the unit officer.  I was seen at medical, & the bleeding stopped without their intervention.  The concerns & specifics of my history of such bleeding are well docu-mented in my BP-10 (Exhibit:O), & in the medical notes.

[57]  On December 16, 2014 I was seen by Defendant Mello. She examined me & noted that I had swollen tonsilur lymph nodes. I was instructed to continue using the saline rinse & the hyper-tonic saline rinse, & to take the Claritin at bed-time.  Defendant Mello informed me that she would be seeing me every 30 days for follow-up.  And Defendant Mello negligently failed to do so.

[58] Also on December 16, 2014, Defendant Sood prescribed a 14 day treatment of Augmentin, approximately 3 hours after I was seen by Defendant Mello.  Unfortunately, neither Defendant Sood nor Defendant Mello informed me of this change/addition to my treatment. Since I had left the Ft. Dix Medical Service 3 hours earlier, I had no way of knowing about the antibiotics. The prescription was

29

handed to me on **December 23, 2014** when I went to pill-line to pick up other medications.

[59]  On **December 22, 2014** I saw **Defendant Sood.**  As I was explaining my concern about the severe right nasal congestion & draining to **Defendant Sood,** he looked up at me from his computer & asked,

"Is this a new problem?"

Clearly, **Defendant Sood** negligently failed to understand the condition that had, at that point, plagued me for 9 months.

[60]  On **December 23, 2014** I had chest radiographs taken at the Ft. Dix Medical Service.  The radiology report, written by Aletta Ann Frazier, MD (University of Maryland) clearly states that there are "Resolving linear opacities," & recommended continued surveillance. Unfortunately, **Defendants Sood, Newland, Travers, & Hollingsworth** negligently failed to provide the pulmonologist (Dr. Steeger - see point 64 below) with the radiographs so that he could review the abnormalities.

30

[61]  On **January 5, 2015** I finished the Augmentin.  I was once again off antibiotics, despite the fact that I was clearly ill. I was still experiencing severe right nasal congestion & intermittent drainage from the nares.

[62]  On **January 6, 2015** I received a response from the Warden to my BP-9 (Exhibit:L).  **Defendant Hollingsworth** defended the actions of his staff.  **Defendant Hollingsworth** negligently ignored many serious failures committed by his staff.  He ignored their failure to send me to the hospital ER in a timely manner.  And he ignored their failure to call an ambulance early in the morning of **March 22, 2014.**  **Defendant Hollingsworth** ignored the staff's failures to perform the appropriate diagnostics at the appropriate time (for example, the nasal sinus radiographs that **Defendant Sood** ordered on **March 20, 2014** were not taken that day [or even the following day, **March 21, 2014**], the radiographs weren't taken until **November 11, 2014**).  **Defendant Hollingsworth** ignored his staff's failures to follow-up on abnormalities found on diagnostics (for example, the pathologic changes found on the radiographs taken on **May 14, 2014** (Exhibit:H) & **November 4, 2014** (Exhibit:M) were not appropriately addressed).  And **Defendant Hollingsworth** ignored his staff's failure

31

to recheck my serious medical condition in a timely manner (I was treated for the chronic infection again on June 25, 2014 & was placed on antibiotics for 14 days.  The recheck exam for this illness was approximately 2.5 months later, on September 11, 2014). Defendant Hollingsworth was negligent in his duties by ignoring a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[63]  On January 12, 2014 I submitted a BP-10 through my unit counselor (Exhibit:O).

[64]  On January 16, 2014 I was examined by Joseph R. Steeger, MD (a pulmonologist.  Exhibit:Q).  Dr. Steeger also examined me on March 26, 2015 (Exhibit:R), & on July 16, 2015 (Exhibit:S). Defendant Sood & the Ft. Dix Medical Service twice failed to provide Dr. Steeger with the chest radiographs so that he could more thoroughly evaluate my condition (Exhibits:R & S).  Despite this handicap, Dr. Steeger was confident in his diagnosis; "Atypical chest pain secondary to involvement of the nerve during the thoracotomy on the right hemi-thorax causing pain & discomfort along the dermatome of that inter-

32

costal nerve" (Exhibit:Q), & "Recurrent pleuritic chest pain/ costochondritis" (Exhibit:S).

Dr. Steeger instructed me to continue taking the nonsteroidal anti-inflammatory medication for the chest pain.  When I expressed my concern to Dr. Steeger that I was having chest pain 15 months after the thoracotomy, he replied "If the pain's still present one year after the thoracotomy, it's likely permanent."  Dr. Steeger did order chest radiographs to be taken prior to his July 16, 2015 exam. Those radiographs were taken on June 29, 2015.  The radiology report written by Jeffrey Galvin, MD (University of Maryland) states: "Negative except for: stable band like scar at right apex" (Exhibit:T). This finding, when taken with Dr. Steeger's diagnosis & with his statement to me, indicates that the chest pain which I still exper-ience daily, is likely a permanent affliction.  And it's the direct result of the **Defendants** negligence, misdiagnosis, & repeated treat-ment delays.

[65]  On **January 22, 2015** I had a CT scan of my sinuses performed at RWJ University Hospital (Hamilton, NJ).  The radiology report (signed by Naomi Schwarz, radiologist) notes significant pathology involving my right maxillary sinus, including clear evidence of obstruction (Exhibit:N).

33

[66]    On **January 29, 2015** I experienced bleeding from my right nares for 13 hours.  And on **February 2, 2015** I experienced a 5 hour nose bleed with draining pus.  That evening, I spoke to EMT Gibb at pill-line, & he examined me.  Mr. Gibb restarted the Augmentin & Ibuprofen for 21 days.

[67]    On **February 27, 2015** I went to the Ft. Dix Medical Service for a refill of the Augmentin.  The bottle which was handed to me contained only 2 pills.  Once again, I was off antibiotics while a serious infection persisted in my body.

[68]    On **February 25, 2015** I received a response to the BP-10 (Exhibit:O).  **Defendant Norwood** defended the actions of **Defendant Hollingsworth**, & he defended the actions of the Ft. Dix Medical Service staff.  **Defendant Norwood** negligently ignored the treatment delays which are clearly outlined here & in my medical records.  He ignored the staff's failures to perform the appropriate diagnostics at the appropriate time, & he ignored their failures to follow-up on abnormalities found on diagnostics (see point 62 above, and Exhibits:E,F,H,M).  **Defendant Norwood** was negligent in his duties

34

by ignornig a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[69]   On **March 5, 2015** I submitted a BP-11 through my unit counselor (Exhibit:U).

[70]   On **March 16, 2015** I was taken to Princeton Eye & Ear (Lawrenceville, NJ) for an exam.  Unfortunately, the Ft. Dix Medical Service failed to schedule the appointment with Dr. Samir Undavia (the ENT specialist who performed my sinus surgery 12 months previously at the hospital).  I was examined by Dean Drezner, MD. Dr. Drezner did document abnormalities, & he instructed me to continue using the Flonase & the nasal saline spray.  Dr. Drezner stated that it was essential for me to recheck with Dr. Undavia. He advised that this follow-up should occur within 1 month (Exhibit:V). **Defendants Sood, Newland, Travers, Hollingsworth, & Norwood** were negligent in their duties because I had been consistently complaining of significant sinus disease (which was clearly documented) since **May 6, 2014,** I was now 12 months out from my hospitalization and initial sinus surgery with Dr. Undavia, & I still had not been re-checked by the surgeon.  Moreover, these **Defendants** were negligent

35

in their failure to follow Dr. Drezner's instructions - the April 2015 recheck with Dr. Undavia never did occur.

[71] On April 17, 2015 I saw Defendant Sood. In addition to the chronic sinus & pulmonary problems I had been dealing with, I was now experiencing paresis of my right index finger. I awoke a few days earlier with an intense tingle/numbness in the joint, & it was quite painful. Since I've been afflicted by chronic Lyme Disease for approximately 20 years, I was well aware of how my body reacted when the disease flared (which it tends to do when I'm stressed). This intense tingle & joint pareses is something that I've experienced many times before. And there could be no doubt that my chronic Lyme Disease was no longer quiescent.

When Defendant Sood examined me, & when I explained to him details of paresis I had experienced in the past because of Lyme Disease (including paralysis of my right knee, paresis of my left knee & elbow, & frequent joint pain), he paused & then commented,

> "I don't know anything about Lyme Disease causing joint problems like that."

Defendant Sood refused to put me on a course of antibiotics, & he negligently ignored the fact that MDC Brooklyn placed me on 'chronic care' when I entered the BOP/Federal system, because I have chronic Lyme Disease.

36

In addition, on April 15, 2015 Defendant Sood showed that he was not well attuned to my chronic sinus & pulmonary problems. When we discussed the pulmonologist, Defendant Sood asked me,

"What did the pulmonologist do?"

And when we discussed the ENT, Defendant Sood asked me,

"What did the ENT do?"

Those exams were done the previous month, & Defendant Sood had more than enough time to review my medical records. He should have known what the specialists did. And he should have known that I was using hypertonic saline nasal spray because Defendant Mello & Dr. Drezner instructed me to do so. Instead, Defendant Sood instructed me to stop using the nasal spray (Exhibit:W).

Also that day, Defendant Sood once again negligently ignored my concerns of, "Right nasal obstruction, pain right face in maxillary region, & fresh blood from nose" (Exhibit:W). He knew about the chronicity, he knew that the CT scan from January 22, 2015 showed significant pathology & evidence of obstruction (Exhibit:N), & he knew that Dr. Drezner had advised that I needed to recheck with my surgeon, Dr. Undavia, the very same month (Exhibit:V). That April 2015 recheck never did occur.

37

[72]   On **May 6, 2015** I saw **Defendant Sood**, after reporting to sick-call, two days previously, that there was no improvement in my right index finger paresis, & that I was 3 weeks overdue for my recheck with Dr. Undavia.  On this day, **Defendant Sood** appeared to be perplexed by the pareses which continued to affect my right index finger.  As he was examining my finger, he looked up at me and accused me of intentionally not taking the Ibuprofen.  And when I reminded **Defendant Sood** that I wasn't on antibiotics for chronic Lyme Disease, & that for me in the past the paresis has always quickly resolved with a course of antibiotics, **Defendant Sood** said,

"You're faking it,
you don't have Lyme Disease."

Once again, **Defendant Sood** was negligent in his duties, as I was sent back to my housing unit without proper/timely medical care.  And the recheck with Dr. Undavia was now 2 months overdue (Exhibit:X).


[73]   On **June 3, 2015** I returned to Princeton Eye & Ear for a recheck exam.  Once again, **Defendants Sood, Newland, Travers, Hollingsworth, & Norwood** were negligent in their duties.  They failed to schedule my appointment with Dr. Undavia - he wasn't in

38

the office.  I was seen by Chetan S. Shah, MD (Exhibit:Y).
Dr. Shah advised that I continue using the Flonase & the nasal
rinse.  He, & his staff, again insisted that it was essential for
me to recheck with Dr. Undavia.  And upon returning to the Ft. Dix
Medical Service,I clearly voiced my concern to **Defendant Hoey** that,
for the second time, the Ft. Dix Medical Service had negligently
failed to schedule my appointment at Princeton Eye & Ear with the
ENT who performed my sinus surgery in **March 2014** - Dr. Undavia.
I also clearly voiced this concern to the two BOP officers who
escorted me on the medical trip.  Still, somehow this important,
& legitimate, concern wasn't mentioned in the notes for the medical
trip return encounter.  Instead **Defendant Hoey** reported, "Inmate
walked into Health Services without complaints returning from a
medical trip to see ENT" (Exhibit:Z).

[74]  On **June 25, 2015** I was examined again by **Defendant Sood**
(Exhibit:AA).  I was still experiencing pain & paresis in my right
index finger.  In addition, the pain had extended to my left elbow,
& I was now experiencing a 'brain fogginess' & was having difficulty
concentrating.  I explained to **Defendant Sood** that Dr. Ron Wilson

39

(Denton, Texas) had treated me for the same CNS signs in December 2012 (I was on Doxycycline for over 13 months). Defendant Sood negligently ignored my comments about the CNS signs. He again appeared perplexed & he continued to insinuate that there must have been an exacerbating factor such as weight lifting (this was simply not true - I don't lift weights & there was no exacerbating factor other than a small spirochete bacterium, Borrelia burgdorferi). Once again, I was not placed on a course of antibiotics for the chronic Lyme Disease.

In addition, on June 25, 2015 I discussed my chronic sinus disease with Defendant Sood. I clearly explained to Defendant Sood that I was very disappointed that he had not scheduled my recheck with Dr. Undavia. And I reminded Defendant Sood that the severe congestion, sinus pressure & headaches, & drainage were still present, & that I was very uncomfortable. But once again, when I left Defendant Sood's exam room that day, nothing had been done to allev- iate my suffering.

[75]    On August 21, 2015 I was taken to Princeton Eye & Ear for an exam. Once again, Defendants Sood, Newland, Travers, Hollingsworth, & Norwood were negligent in their duties & failed

to schedule my recheck specifically with Dr. Undavia.  This was the third such blunder since my BP-9 & BP-10 were filed.  I was examined by another staff physician.  He stated that it was essential for me to recheck with my surgeon, Dr. Undavia.  He also prescribed Ciprofloxacin (Exhibit:BB), but **Defendants Sood & Newland** negligently failed to give me the antibiotic.

[76]   Also on **August 21, 2015** I submitted a written cop-out to the Ft. Dix Medical Service HSA (Exhibit:CC).  In that document, I again complained that my appointments were not being appropriately scheduled.  And I again requested that I be scheduled with Dr. Undavia.  **Defendant Wilk** responded,

> "There is no guarantee you will see
> the same doctor who performed your surgery."

**Defendant Wilk** knew very well that Dr. Drezner, Dr. Shah, and the staff at Princeton Eye & Ear were directing, over & over, that I needed to recheck with my surgeon, Dr. Undavia.  Still, **Defendant Wilk** negligently chose to leave to chance which MD I would see, instead of simply picking up the phone & calling Princeton Eye & Ear.

41

Case 1:18-cv-02099-CPO-MJS   Document 1   Filed 02/14/18   Page 49 of 64 PageID: 49

[77]   On or about September 7, 2015 I received a response from the BOP Central Office to the BP-11 (Exhibit:U).  Defendant Connors defended the actions of his subordinates.  In an attempt at damage control, Defendants Connors, Schult, & Carvajal negligently ignored the fact that Defendant Sood misdiagnosed my illness.  Defendants Connors, Schult, & Carvajal ignored the treatment delays which are clearly outlined here & in my medical notes.  And these Defendants ignored the Ft. Dix Medical Staff's failures to perform the appropriate diagnostics at the appropriate times, and they ignored the failures of Defendants Sood, Newland, Mello, Tyas, & Syjontian to follow-up on abnormalities found on diagnostics.  Defendant Connors is quick to point out that I was seen by an ENT, but Defendants Connors, Schult, & Carvajal negligently ignored the very real fact that it took far too long for me to recheck with my surgeon (in fact, on the day Defendant Connors signed the BP-11 response [September 2, 2015] I had not yet seen Dr. Undavia).  And these Defendants negligently ignored the fact that Defendants Newland, Sood, Travers, Wilk, Hollingsworth, Ortiz, & Norwood all negligently failed, time after time, to appropriately schedule my appointments with Dr. Undavia.  Defendants Connors, Schult, Carvajal, Newland, Travers, Wilk, Hollingsworth, Ortiz, & Norwood were all negligent

42

in their duties by ignoring a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[78] On **September 15, 2015** I was examined by **Defendant Sood.** Once again, we discussed my ailments – the chronic sinus disease, as well as the chronic Lyme Disease. My clinical signs had not changed, & I had yet to recheck with Dr. Undavia. Only one change was made to my treatment – **Defendant Sood** discontinued the Ranitidine (the acid-blocker which he prescribed to me in **March 2014** when he misdiagnosed my septic sinus infection as chronic espohageal reflux disease). **Defendant Sood** had negligently prescribed an unnecessary medication to me for 18 months (Exhibit:DD).

[79] On **November 9, 2015** I was taken to Princeton Eye & Ear. I was examined by Dr. Samir Undavia for the first time since my hospitalization. Dr. Undavia expressed his concern that I had not been brought in for any post-operative rechecks in 2014. He stated that this after-care was essential in order to minimize scar tissue formation.

As of the date of this complaint/affidavit, I am still waiting to receive my medical records from Princeton Eye & Ear for this encounter, so that I can more thoroughly comment on the visit.

43

[80]  On **November 25, 2015** I was examined by a new MD, Dr. Carl Sceusa.  Dr. Sceusa & I had a long conversation about my ailments. He agreed that my request to have my appointments at Princeton Eye & Ear scheduled with Dr. Undavia was reasonable.  He also agreed that based upon my history, clinical signs (joint paresis/paralysis & pain), previous diagnostics (extremely high Lyme IgG & IgM titres at the time of my diagnosis by Ronald Chodosh MD, in Ossining NY), & response to therapy for Lyme Disease, it was quite certain that I did infact have chronic Lyme Disease.  And when I explained that my Las Vegas MD (Dr. Tony Gumina – Family Tree Medical) had treated me for chronic Lyme Disease for approximately 15 years, Dr. Sceusa listened attentively instead of accusing me of "Faking it," as **Defendant Sood** did.

I should also mention here that when I was presented the plea agreement for my criminal case, I agreed to sign/plea guilty only if the Feds guaranteed that I would receive proper treatment for chronic Lyme Disease.  This was obviously very important to me (Lyme Disease has caused havoc in my body, & I have found it very difficult to find MD's who are knowledgeable about Lyme Disease). The prosecution agreed to this condition (my NY attorney, Dave Hoovler, can verify this).  Unfortunately, **Defendant Sood**

44

negligently failed to treat my chronic Lyme Disease appropriately. And this failure is a clear breach of the agreement which the prosecution & I have in place.

By the time Dr. Sceusa examined me on **November 25, 2015,** the clinical signs I was experiencing as a result of chronic Lyme Disease had resolved. The Borrelia was quiescent. At that point, Dr. Sceusa corrected the medical record – he added Lyme Disease (chronic) once again to my Axis III Assessment (Exhibit:GG). **Defendant Sood,** at some point, negligently removed it entirely from my medical record.

I have included here, the medical records from **February 6, 2014** (from MDC Brooklyn, Exhibit:HH), & the **March 4, 2014** Inmate Intra-system Transfer (for my transfer from MDC Brooklyn to FCI Ft. Dix, Exhibit:II). These documents clearly show that Lyme Disease chronic was listed as an ailment for me (on the Axis III Assessment), & that I was being treated for chronic Lyme Disease, before arriving at Ft. Dix. I have also included the Health Problems list which was generated on **October 30, 2014** (Exhibit:JJ). This document clearly shows that Lyme Disease chronic was listed as an ailment for me (on Axis III) while I was here at Ft. Dix.

45

[81]   On **February 11, 2016** I was examined by Dr. Undavia. This was only the second such exam for me since my discharge from the hospital, on **May 4, 2014.** Dr. Undavia performed a minor procedure inside my right nostril to remove scar tissue. His medical record states, "Synechiae were noted from the posterior septum to inferior turbinate. Synechiae were incised with a 15 blade scapel," (Exhibit:LL). Dr. Undavia advised that I have a CT scan of my sinus & then recheck with him upon its completion. We discussed the option of me undergoing a second surgery on my right sinus. Dr. Undavia wanted to have the CT scan done first though. We would then decide if a second surgery was needed on the post-CT recheck.

[82]   On **April 6, 2016** I had a CT scan done of my sinus at Ft. Dix. The radiology report, written by Charles Muchnak, MD clearly shows evidence of right maxillary sinus pathology, (Exhibit:MM).

46

[83]   On **September 12, 2016,** after waiting over 5 months for my post-CT scan recheck with Dr. Undavia, I submitted a cop-out to **Defendant Wilk** (Exhibit:NN).   I clearly voiced my concern that my serious medical needs weren't being addressed in a timely manner. And I then continued to wait, as **Defendants Sood, Newland, Wilk, Ortiz, Norwood, Connors, Schult, Carvajal, & Samuels** were clearly in no hurry to arrange for the second surgery.   I didn't recheck with Dr. Undavia to make those arrangements until **December 1, 2016 –** 10 long months after my **February 11, 2016** appointment.

[84]   On **December 1, 2016** I was again examined by Dr. Undavia (Exhibit:OO).   After reviewing the CT scan from **April 6, 2016,** & after examining my nasal cavity, Dr. Undavia & I discussed the option of pursuing a second sinus surgery.   We discussed the pros & cons of such a procedure.   Concerns about additional scarring were discussed at length – we were both concerned that I had not been brought in to do the routine post-operative rechecks in **2014.** If there was a repeat of that failure, there would be even further scarring with a second surgery.   We also discussed the severity of my symptoms – the severe congestion, sinus pressure, headaches,

47

fatigue, inability to sleep well, prolonged & frequent nose bleeding, & the stress & anxiety. These clinical symptoms had plagued me for 31 months at the time of this discussion (and eventually 37 months altogether, as I'll continue to outline here).

All things considered, Dr. Undavia & I decided that in order to alleviate my suffering, a second sinus surgery would be necessary.

[85] On **March 9, 2017** I was taken to Princeton Eye & Ear for the pre-operative office call (Exhibit:PP). Unfortunately, for the 4th time in 7 visits, **Defendants Sood, Newland, Wilk, Ortiz, Norwood, Connors, Schult, Carvajal, & Samuels** negligently failed to schedule my appointment with Dr. Undavia. I was seen by Aleen Lee MD, who advised that I needed to see Dr. Undavia for my pre-operative visit. And once again, my treatment was delayed.

[86] On **April 27, 2017** I saw Dr. Undavia for my pre-operative visit (Exhibit:QQ). Dr. Undavia scheduled me for a second sinus surgery. And he prescribed Prednisone (an anti-inflammatory corticosteroid), & Keflex (an antibiotic).

48

[87]    On **May 4, 2017** I was taken to Saint Francis Medical Center for sinus surgery (Exhibit:D).  Dr. Undavia clearly states in his surgery report that I "Had endoscopic sinus surgery, septoplasty & inferior turbinate reduction with me a few years ago.  He was unable to follow up.  Postoperatively, he developed significant scar banding & recurrence of nasal polyps."  Dr. Undavia also informed me on **November 9, 2015** in his Lawrenceville office, that it's absolutely essential (for surgical procedures like the one I had on **April 27, 2014**) for the patient (me) to recheck with him early & often post-operatively, in order to avoid such scarring.

I was, infact, able to follow up.  Unfortunately, as I've shown here in my complaint – **Defendants Sood, Newland, Tyas, Mello, Syjongtian, Travers, Wilk, & Hollingsworth** negligently failed to arrange for my proper follow up with Dr. Undavia.  And **Defendants Hollingsworth, Ortiz, Travers, Wilk, Norwood, Connors, Schult, Carvajal, & Samuels** were busy attempting damage control, which only negligently delayed proper medical/surgical care further.

Dr. Undavia also comments that I "Forgot to bring his [my] CT.  Because of this, I felt it was difficult to perform the operation."  Once again, the above named **Defendants** negligently failed to provide a specialist with necessary diagnostic test results.

This resulted in my surgery being an, "Extremely difficult case." In fact, when I read Dr. Undavia's surgery report, I very much got the impression that, because he wasn't given my most recent CT at the time of surgery, he contemplated cancelling/re-scheduling my surgery (Exhibit:D).

Intra-operatively, Dr. Undavia encountered extensive scar tissue formation.  And this scarring was a direct result of the negligence of the **Defendants. Defendants Syjongtain & Sood** were clearly negligent in their delays in providing aggressive treatment which meets acceptable & current medical standards. **Defendant Sood** misdiagnosed my sepsis as Esophageal Reflux Disease, chronic.  No corticosteroids were administered to me, no IV antibiotics were administered, & my hospitalization was delayed unnecessarily.  This delay was medically negligent because of the fact that my condition was clearly worsening rapidly.  Still, with this knowledge, & with the full knowledge that Ft. Dix had no MD or PA available **Friday March 21, 2014** after 3 PM, **Saturday March 22, 2014, Sunday March 23, 2014,** and **Monday March 24, 2014** until 6 AM, I was sent back to my housing unit ill.  I faced a period of 63 hours during which I could not receive adequate medical care.  Moreover, when my condition

50

became critical, at approximately 4 AM on **Saturday March 22, 2014,** **Defendant John Doe #1** negligently failed to call an ambulance. Instead, approximately 7 hours later, I was sent to the hospital ER by BOP van. This delayed my receiving critical IV treatments until arrival at the hospital, approximately Noon that afternoon – a delay of approximately 7.5 hours. These above negligent delays allowed the sepsis far too much time to ravage my lungs & body. Irreparable harm was done to my body as a result.

Dr. Undavia also noted in the surgery report, "I was unable to see the opening of the maxillary sinus," and he went on to report, "The maxillary sinus antrum was then probed. There was no opening. A surgical opening using a ball tipped seeker probe was made. Then, thick purulent material was expressed from this area." And he notes that, "The ethmoid air cells had extensive scar tissue," (Exhibit:D). These significant changes are proof that my complaints to the **Defendants,** month after month for a period of 3 <u>years</u>, were genuine. Unfortunately, **Defendants Tyas, Mello, Syjongtian, Sood, Newland, Wilk, Travers, Hollingsworth, Ortiz, Norwood, Connors, Schult, Carvajal, Samuels,** & **Inch** were negligent in their duties. The constant treatment delays, plus negligence & incompetence, lead directly to me experiencing an enormous amount of pain & suffering since **March 19, 2014.**

51

For 3 years, I lived with a pus-filled right maxillary sinus. In no way does this level of care meet current, acceptable, standards of care. I remember saying to **Defendant Travers** when he called me to medical to discuss my BP-9, "I may be an inmate, but I'm still a human being." Quite obviously, I didn't receive anywhere near the same level of care I would have received if I were not incarcerated.

[88] Because of the negligent care I received at FCI Ft. Dix & Saint Francis Medical Center, I experienced, & continue to experience health problems. I experienced an enormous amount of pain associated with the surgical procedures. I cannot even begin to describe the pain I felt when Dr. Sienfeld cut my chest open. There are simply no words which adequately describe that degree of pain. The pain was so intense, when I awoke in the ICU I asked Dr. Sienfeld to knock me back out. He said that he could not do that. In fact, he needed me to cough intentionally - the coughing was required so that I could clear out my lungs. The pain was constant for many weeks. It hurt every minute of every day. It didn't stop, & the narcotic analgesics (Morphine & Dilaudid) did almost nothing to ease the pain. And it hurt the most when I coughed, which I did often. It was pure agony.

52

The chest pain was extreme for many, many, weeks.  It slowly improved (over the course of approximately 1.5 to 2 years). The sharp, lancing, pain that I felt in the center of my chest is still present when I cough, yawn, sneeze, or exert myself.  The pain associated with the incision/ribs is a constant, dull pain. I have less energy, & there's a noticeable increase in exercise intollerance.  If I exert myself beyond a medium activity level, I experience an alarming degree of light-headedness.  The pulmonologist (Dr. Steeger) who I saw in 2015 told me that  "If the pain's still present one year after the thoracotomy, it's likely permanent."

After an uncontrolled sinus infection, & two sinus surgeries, my right sinus is filled with scar tissue.  Dr. Undavia had to remove necrotic tissue from my nasal sinus.  These changes are permanent – the anatomy of my right nasal sinus will never be normal again. On **May 4, 2017**, Dr. Undavia was able to open up the right maxillary sinus, which had been obstructed for approximately 3 years.  That's helped with the constant pressure, but the scarring continues to affect the sinuses' ability to drain normally.  On a daily basis, I struggle to get the right maxillary sinus to drain normally into my naso-pharynx.  And every evening, when I lay down to sleep,

53

I spend a significant amount of time unable to sleep, trying to get the sinus to drain, so that I'm comfortable & can get to sleep. In addition, I am still experiencing nose bleeds.  They are not as frequent as they were before my 2017 surgery.  But they do occur weekly.

My struggles with chronic Lyme Disease are well documented. Upon arrival at FCI Ft. Dix, I told **Defendant Sood** about the illness. I also made sure he knew where those medical records could be found – Dr. Tony Gumina (Family Tree Medical, in Las Vegas) had treated me for approximately 15 years, & I saw a specialist while I was on pre-trial release as well, Dr. Ron Wilson (operating out of The Womans Centre, in Denton Texas).  I also made sure that **Defendant Sood** knew that MDC Brooklyn placed me on 'chronic care' because of the illness.  Still, **Defendant Sood** negligently ignored my medical needs with the illness.  I was not placed on antibiotics in 2015 when I experienced a flare-up, I am currently not on any analgesics to treat my joint pain (despite many requests, Exhibit:RR), & **Defendant Sood** refuses to give me a "soft-shoe pass" to help with my knee/hip pain.  **Defendant Sood** has negligently failed to treat my chronic Lyme Disease appropriately.  And this failure is a clear breach of the agreement which the prosecution & I have in place (see point 80 above).

54

[89]         The Cruel & Unusual Punishment
Clause of the 8th Amendment was designed to protect those
convicted of crimes such as Plaintiff: Alexis

And can limit the type of punishment that is imposed. Ingraham v.

Wright, 430 U.S. 651, 664, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

[90]    What is required to establish the unnecessary
and wanton infliction of pain varies according to the nature of the
alleged 8th Amendment Violation

See, e.g., Layne v. Vinzant, 657 F.2d 468 (1st Cir.1981); Rosen v.

Chang, 758 F.Supp. 799 (D.RI.1991).

[91]                   Relief Requested

A. Issue a Declaratory Judgment: declaring that Defendants, supra

actions & inactions facilitated both violations of the Civil RICO

Statutes 18 U.S.C.§§1961-1967 & the 1st, 5th, 6th & 8th Amendments

of the U.S. Constitution;

B. Award Compensatory Damages: in the following amount of

One Million Dollars against each Defendant for violations of the

RICO Statute 18 U.S.C.§§1961-1967 & Bivens's 1st, 5th, 6th & 8th

Constitutional Amendments violations as the Defendants supra

intentional infliction of emotional distress and anguish & of

Physical, Monetary & Psychological injuries sustained as a result

of Plaintiff: Alexis's sufferings from the unlawful, unconstitutional

& improper actions of the Defendants against Plaintiff: Alexis;

C. Award Punitive Damages: against Defendants supra in the amount

of One Million Dollars each for their retaliation against Alexis

for Alexis's exercising his 1st, 5th, 6th, & 8th Amendment's rights

& Due Process;

**D. Order,** Plaintiff: Alexis & the above Defendants, to facilitate a proposed scheduling Discovery Order under Fed.R.Civ.P. Rule 26-37;

**E. Deem,** this complaint as filed under Hughes v. Rowe, 449 U.S. 5, 9, 6 L.Ed.2d 163, 101 S.Ct. 173 (1980)(Per Curiam); Haines v. Kerner, 404 U.S. 519, 520, 30 L.Ed.2d 652, 92 S.Ct. 594 (1972) (Per Curiam); Lema v. USA, 987 F.2d 48, 54, n.5 (1st Cir.1993), that this Court has a duty to contrue Pro-Se (Alexis's) submissions with liberality;

**F. Order,** the above requested "Preliminary Injunction";

**G. Deem,** credibility determinations are a jury function, NOT those of a judge...." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). See also Rule v. Brine Inc., 86 F.3d 1002, 1011 (2d Cir.1996)("Assessments of crediblity and choices between con-flicting versions of the events are matters for a jury, NOT for the Court.");

**H. Order,** the above articulating factual context of this case to adhere to the axiom that in ruling on a motion for Summary Judgment "[t]he evidence of Alexis's Complaint is to be believed, and all justifiable inferences are to be drawn in Alexis's favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258 (1986); see also Tolan v. Cotton, No. 13-551) Supreme Court May 5, 2014.

Signed under 28 U.S.C.§1746, under penatlies of perjury the above & the following to be true, correct & complete. Pro-Se.

Respectfully Submitted By
Plaintiff/Claimant/Affiant:

Vincent P. Alexis
19213-052
FCI Fort Dix
P.O. Box 2000
Joint Base MDL
Fort Dix, New Jersey 08640

56

## Certificate of Service

I, Plaintiff: Alexis, hereby certify that I have served this Complaint/Summons upon the Defendants via: United States Mail/ Postaged Prepaid on this _____8 th_____ day of **February 2018,** to the following:

Clerk of Courts
Clerk's Office
U.S. District Court
United States Courthouse
District of New Jersey
Camden Division
400 Cooper Street
Room 1050
Camden, New Jersey
08102-1570

Jeff Sessions
U.S. Attorney General
U.S. Attorney General's Office
950 Pennsylvania Ave,, N.W.
Washington, D.C. 20530

Defendants Inch, Samuels, Schult,
Connors, Hollingsworth, and
Syjongtian
U.S. Dep't of Justice
Bureau of Prisons
320 First St. NW
Washington, DC 20534

Defendants Carvajal & Norwood
U.S. Dep't of Justice
Bureau of Prisons
U.S. Customs House, 7th Floor
2nd & Chestnut St.
Philadelphia, PA 19106

Defendant Santana
U.S. Dep't of Justice
Bureau of Prisons
U.S. Armed Forces Reserve Complex
346 Marine Forces Dr.
Grand Praire, TX 75051

U.S. Attorney's Office
D. New Jersey/Camden
United States Courthouse
400 Cooper Street
Camden, New Jersey
08102

Defendants Smith, Ortiz, Travers,
Wilk, Newland, Sood, Tyas, Mello,
and Hoey
FCI Fort Dix
Box 38
J.B. MDL, NJ 08640

Defendant Saint Francis Medical
Center
Saint Francis Medical Center
601 Hamilton Ave
Trenton, NJ 08629

57