IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT P. ALEXIS,<br><br>Plaintiff,<br><br>v.<br><br>JEFF SESSIONS, et al.,<br><br>Defendants. | Civil Action<br>No. 18-2099 (RBK-KMW)<br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff, Vincent Alexis, is a federal prisoner currently incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a civil complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* ECF No. 1). Plaintiff has also requested a preliminary injunction. (*Id.* at 19). For the reasons stated in this opinion, the Court will dismiss Plaintiff's complaint without prejudice for failure to state a claim and deny Plaintiff's request for a preliminary injunction.

## II. FACTUAL BACKGROUND

The Court will construe the allegations of the complaint as true for the purpose of this opinion. Plaintiff names the following individuals and entities as Defendants: (1) Jeff Sessions, United States Attorney General; (2) Mark Inch, Director of the Bureau of Prisons; (3) Charles E. Samuels, Jr., former director of the Bureau of Prisons; (4) Doctor Carvajal, Regional Director of the Bureau of Prisons; (5) Mr. Smith, Acting Warden/Assistant Warden, FCI Fort Dix; (6) Jose Santana, Director of the Designation and Sentence Computation Center of the Bureau of Prisons; (7) Deborah Schult, Medical Director of the Bureau of Prisons; (8) Ian Connors, Administrator of

the Bureau of Prisons; (9) J.L. Norwood, Regional Director of the Bureau of Prisons; (10) Mr. Hollingsworth, former Warden, FCI Fort Dix; (11) Mr. Ortiz, Warden/former Warden of FCI Fort Dix; (12) Mr. Travers, Health Service Administrator, FCI Fort Dix; (13) Mr. Wilk, Health Service Administrator, FCI Fort Dix; (14) Doctor Newland, Clinical Director, FCI Fort Dix; (15) Doctor Ravi Sood, FCI Fort Dix; (16) Sam Syjongtian, Physician's Assistant, formerly employed at FCI Fort Dix; (17) P. Tyas, Physician's Assistant, FCI Fort Dix; (18) Christina Mello, Physician's Assistant, FCI Fort Dix; (19) T. Hoey, Emergency Medical Technician, FCI Fort Dix; (20) Saint Francis Medical Center; (21) John Doe #1, Lieutenant/Operations Lieutenant, FCI Fort Dix; (22) John Doe #2, Medical Doctor/Radiologist, Saint Francis Medical Center; (23) John Doe #3, Nurse, FCI Fort Dix; and (24) John & Jane Doe(s).

This case arises from Plaintiff's medical treatment while incarcerated at FCI Fort Dix, for his septic sinus infection and chronic Lyme disease. (ECF No. 1). According to the complaint, Plaintiff became ill with a septic sinus infection on March 19, 2014. (*Id*. at 21). Plaintiff, who holds a doctorate in veterinary medicine (*Id*. at 32), alleges that he sought treatment for the infection, but through a series of misdiagnoses, delays, and refusals to send him to the hospital, his infection remained untreated, until it significantly worsened. (*Id*. at 21–26).

Prison officials ultimately sent Plaintiff to Defendant Saint Francis Medical Center on March 22, 2014, where his diagnostic tests revealed that a bacterial infection had spread through his body. (*Id*. at 26). In order to gain control over the sepsis, hospital physician Dr. Samir Undavia performed sinus surgery to remove the infection sites and establish drainage on March 27, 2014. (*Id*. at 27). Dr. Undavia encountered tremendous inflammation and observed that the "case became very difficult given how much necrotic tissue was everywhere," as a result of the earlier misdiagnoses and delays in Plaintiff's treatment. (*Id*.).

While recovering at the hospital, on March 31, 2014, both of Plaintiff's lungs collapsed, requiring hospital staff to install emergency chest tubes. (*Id.* at 27–28). Plaintiff contends that the staff member negligently positioned the chest tubes, which required a second procedure to reposition those tubes. (*Id.* at 28). The repositioning failed and required Plaintiff to undergo major thoracic surgery. (*Id.*). The hospital discharged Plaintiff on May 5, 2014. (*Id.* at 29).

According to Plaintiff, from the date of his discharge until September 15, 2015, prison officials and medical staff misdiagnosed his residual sinus issues and Lyme disease, withheld medical documents, and negligently failed to prescribe antibiotics on a number of occasions. (*Id.* at 29–50). Additionally, Plaintiff takes issue with the staff's failure to schedule some of his post-surgery follow-ups with Dr. Undavia, instead "negligently" scheduling him to meet with other ear, nose, and throat specialists. (*Id.*).

In response to those failures, Plaintiff filed his grievances and appeals thereof, on November 6, 2014, November 20, 2014, January 12, 2015, and March 5, 2015, amending his appeal each time to include new alleged failures of prison officials and medical staff. He received a response to each of those appeals on November 17, 2014, January 6, 2015, February 25, 2015, and September 7, 2015, from a number of the Defendant wardens, directors, and administrators, who ultimately concluded that Plaintiff received proper and adequate medical care and treatment and denied the appeals. (ECF No. 1, at 33, 38, 41, 49).

Plaintiff finally met with Dr. Undavia for his first post-operative check on November 9, 2015 but contends that prison officials and medical staff unnecessarily delayed two of four subsequent meetings with Dr. Undavia. (*Id.* at 50–55). During those meetings, Dr. Undavia recommended that Plaintiff undergo a second surgery to alleviate his residual sinus and related issues. (*Id.* at 54–55). Dr. Undavia performed the second surgery on May 4, 2017. (*Id.* at 56).

3

Although the second surgery alleviated some of Plaintiffs afflictions, he alleges that he still experiences difficulty draining his sinuses, trouble sleeping, and nosebleeds. Additionally, he experiences significant pain and restrictions on activity, as a result of the thoracotomy after his first sinus surgery. (*Id*. at 60–61).

Plaintiff now raises[1] Eighth Amendment deliberate indifference claims against the individual Defendants, alleging that the Defendants knew of his serious medical needs and refused to provide proper treatment, delayed necessary medical treatment, prevented him from receiving medical treatment, or some combination of the three.

### III. STANDARD OF REVIEW

**A. Standard for *Sua Sponte* Dismissal**

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[1] Although the complaint makes additional references to the first, fifth, and sixth amendments, and civil Racketeer Influenced and Corrupt Organizations Act("RICO") claims, 18 U.S.C. §§ 1961–67, when describing the parties and requesting relief, such "passing reference[s]" are not sufficient to raise a civil RICO claim or a first, fifth, or sixth amendment claim. *See, e.g., Mickell v. Police Dep't of Scranton*, No. 16-00291, 2017 WL 4532160, at *3 (M.D. Pa. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 4516748 (M.D. Pa. Oct. 10, 2017); *DeRaffele v. City of Williamsport*, No. 15-02186, 2016 WL 11200711, at *1 (M.D. Pa. Oct. 3, 2016), *report and recommendation adopted*, 2018 WL 2086074 (M.D. Pa. May 4, 2018). Thus, the Court construes the complaint as raising only Eighth Amendment deliberate indifference claims.

To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## B. Bivens Actions

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 Fed. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 Fed. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

5

U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855. As is relevant in the present case, the Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who is personally involved in the deprivation. *Carlson*, 446 U.S. at 19.

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

## IV.   DISCUSSION

### A. Bivens Action Against Attorney General Jeff Sessions, Director Mark Inch, Director Samuels, Acting Warden Smith, and Director Jose Santana

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior. See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

In general, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused

6

[the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff provides no facts describing how Defendant Sessions, Inch, Samuels, Smith, and Santana allegedly violated his constitutional rights. Plaintiff fails to allege that these Defendants expressly directed the deprivation of his constitutional rights or created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivation. Nor does Plaintiff allege facts to support the personal involvement of these Defendants, reciting only the legal conclusion that they violated Plaintiff's constitutional rights. Accordingly, the Court will disregard the complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss Plaintiff's claims against these Defendants, without prejudice, for failure to state a claim.

### B. Statute of Limitations

As to the remaining Defendants, the Court can raise the issue of the statute of limitations *sua sponte* at the screening stage. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.").

Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher,* 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir. 1993). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. Ann. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer,* 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato,* 549 U.S. 384, 388 (2007). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *See Hughes,* 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.,* 142 F.3d 582, 599 (3d Cir. 1998)).

Here, Plaintiff complains of denials and delays in his medical care which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197.

Courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment

... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

In the present case, determining when Plaintiff knew of or had reason to know of his Eighth Amendment injuries is a somewhat unusual task in light of Plaintiff's advanced medical knowledge. According to Plaintiff, he became ill with a septic sinus infection on March 19, 2014. Plaintiff contends that his symptoms "should have been alarming to any health care professional" and that the prison medical staff should have sent him to the hospital at his request. Instead, he alleges that the staff failed to diagnose and treat him, until his infection worsened, which required him to undergo sinus surgery on March 27, 2014, at Saint Francis Medical Center. During his recovery at the medical center, both of his lungs collapsed, which necessitated a major thoracotomy.

The complaint then alleges, in impressive detail, that Plaintiff notified the prison medical staff of issues arising from his surgeries and pre-existing Lyme disease and then *advised them* of the proper course of medical treatment. For example, on a number of instances, Plaintiff received his medical test results, such as his radiographs, and alleges that he was able to properly diagnose himself and request the proper treatment. With his medical knowledge in mind, he explains that on many occasions over approximately eighteen months, until September 15, 2015, the medical staff refused to provide proper treatment, delayed necessary medical treatment, and prevented him from receiving medical treatment. (ECF No. 29–50). Plaintiff then faults the medical directors and prison administrators, directors, and wardens for denying his administrative grievances and appeals, and for failing to provide him with the requested relief.

9

Plaintiff filed those grievances and appeals, on November 6, 2014, November 20, 2014, January 12, 2015, and March 5, 2015, complaining of the denied, delayed, and prevented treatment, in impressive detail. (ECF No. 1, at 32, 34, 39, 42). Thus, at the latest, Plaintiff was aware of his injury and had a complete cause of action as of March 5, 2015, as to his deliberate indifference claims preceding that date. To the extent that exhausting administrative remedies could have tolled the statute of limitations, Plaintiff received a denial to the last of those appeals on September 7, 2015. *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015). Consequently, the statute of limitations required[3] Plaintiff to file a complaint raising those claims by September 7, 2017.

Plaintiff's allegations after filing his last appeal through September 15, 2015, generally pertain to Defendant Sood's refusal to treat a flare-up of Plaintiff's Lyme disease, and the failure of Defendants to schedule a follow-up with Dr. Undavia, who performed the first surgery, instead scheduling Plaintiff to see a different ear nose and throat doctor. (*See* ECF No. 2, at 42–50). Plaintiff states that he was well-aware of his Lyme disease and the need for a follow-up with Dr. Undavia each time Defendants denied his requests. *Id.* Thus, he had a complete cause of action, and the statute of limitations required him to file a complaint as to those claims by September 15, 2017, at the latest. Accordingly, because Plaintiff did not file the instant complaint until February of 2018, the statute of limitations bars these claims and any claim that arose prior to February of 2016. *Peguero*, 520 F. App'x at 60.

---

[3] To the extent that the Court could interpret Plaintiff's claims as medical malpractice or ordinary negligence claims, a two-year statute of limitations would also apply to such claims. *See* N.J.S.A. § 2A:14-2; *Montgomery v. DeSimone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998); *McGrogan v. Till*, 744 A.2d 255, 260 (N.J. Super. Ct. App. Div. 2000), *aff'd as modified*, 771 A.2d 1187 (2001).

Apart from administrative remedy tolling, certain statutes and doctrines allow the Court to toll the statute of limitations, but Plaintiff fails to articulate any basis for such tolling. For example, New Jersey statutes set forth certain bases for "statutory tolling." *See, e.g.,* N.J. Stat. Ann. § 2A:14–21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14–22 (detailing tolling because of non-residency of persons liable). New Jersey law also permits "equitable tolling" where an adversary's misconduct induced or tricked a complainant into allowing the filing deadline to pass, or where "in some extraordinary way" someone or something prevented plaintiff from asserting his rights, or where a plaintiff has timely asserted his rights through a defective pleading or in the wrong forum. *See Freeman v. New Jersey,* 788 A.2d 867, 880 (N.J. Super. Ct. App. Div. 2002). However, absent a showing of a defendant's intentional inducement or trickery, the Court should apply the doctrine of equitable tolling sparingly and only where sound legal principles and the interest of justice demand its application. *Id.*

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. *See Lake v. Arnold,* 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios: (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where extraordinary circumstances prevent a plaintiff from asserting her; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum. In this case, Plaintiff fails to articulate any basis for equitable tolling.

Accordingly, it is apparent that all of Plaintiff's claims that arose prior to February of 2016, are time barred, and the Court will dismiss such claims as untimely. If Plaintiff believes that he can assert facts that warrant tolling, he may move to re-open this case and to file an amended complaint stating the basis for such tolling.

## C. Remaining Allegations

With the exception of two allegations discussed below, the remainder of the complaint states only the extent of the damages resulting from the Defendants' alleged conduct. Specifically, Plaintiff details the duration of his suffering, how some of his afflictions are now permanent, and how Dr. Undavia might have improved his prognosis but for the negligence of certain Defendants. (ECF No. 1, at 53–61). However, the statute of limitations begins to run "when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." *Hilton v. Kronenfeld*, No. 04-6420, 2008 WL 305276, at *7 (D.N.J. Jan. 29, 2008) (quoting *Wallace*, 549 U.S. at 391). A claim "accrues in a federal cause of action as soon as a potential claimant either is aware, or should be aware, of the existence of and a source of an injury . . . not upon awareness that this injury constitutes a legal wrong." *Id.* (quoting *Oshiver v. Levin*, 38 F.3d 1380, 1386 (3d Cir. 1994)). Consequently, Plaintiff's assignments of blame and realization of the extent of his damages has no effect on the conclusion that nearly all of his claims accrued before February 14, 2016.

Plaintiff's only remaining allegations after February 14, 2016, are that Defendants Sood, Newland, Wilk, Ortiz, Norwood, Connors, Schult, Carvajal, and Samuels negligently delayed scheduling two of Plaintiff's appointments with Dr. Undavia. First, Plaintiff alleges that these Defendants were "in no hurry" to arrange the second surgery, resulting in a ten-month delay between the February 11, 2016, meeting with Dr. Undavia, and the surgery consultation on December 1, 2016. (ECF No. 1, at 54). Second, Plaintiff implies that an *unspecified person*, "negligently" scheduled him to see a different ear, nose, and throat doctor on March 9, 2017, which resulted in a month and half delay. (ECF No. 1, at 55). Ultimately, Plaintiff completed his pre-

operative visit with Dr. Undavia on April 27, 2017, who performed the second surgery on May 4, 2017.

Such allegations fail to constitute deliberate indifference to a serious medical need. A deliberate indifference claim premised on delayed medical treatment requires Plaintiff to demonstrate that "the delay . . . was motivated by non-medical factors." *Miller v. Steele-Smith*, 713 F. App'x 74, 80 (3d Cir. 2017) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017). "The lack of an identifiable medical reason explaining a treatment delay does not necessarily mean" that a non-medical reason motivated the delay. *Id*.

Plaintiff fails to allege that any specific Defendant intentionally scheduled him to meet with the wrong specialist or otherwise delayed his appointments, let alone that a non-medical reason motivated those delays, such as a desire to punish, lessen a workload, or save money. *Cf. id*. Accordingly, Plaintiff fails to state a claim that any Defendant violated his Eighth Amendment rights. *Id*. Similarly, without an underlying violation, Plaintiff fails to state a supervisor claim against Defendants Sood, Newland, Wilk, Ortiz, Norwood, Connors, Schult, Carvajal, and Samuels, under *Bivens*. *See Moore*, 2018 WL 1203470, at *4. Accordingly, the Court will dismiss Plaintiff's remaining claims against these Defendants, without prejudice, for failure to state a claim.

### D. Request for a Preliminary Injunction

Having dismissed all of Plaintiff's claims, the Court also denies his request for a preliminary injunction because he fails to show a reasonable probability of success on the merits. *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994) (holding that in deciding motion for preliminary injunction, a district court must first determine whether movant has shown reasonable probability of success on the merits).

A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014). To demonstrate a risk of irreparable harm, a plaintiff must make a "clear showing of immediate irreparable injury" or a "presently existing actual threat." *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980). Stated differently, a plaintiff cannot show irreparable harm by reference to an injury that has already occurred. *E.g.*, *Campbell Soup Company v. Conagra, Inc.*, 977 F.2d 86, 92 (3d Cir. 1992); *Garrett v. PennyMac Loan Servs.*, No. 18-00718, 2018 WL 2981266, at *3 (M.D. Pa. June 14, 2018).

Plaintiff seeks an injunction for "proper & timely medical/surgical care" for his afflictions, and to ensure that he follows-up with Dr. Undavia and a Lyme disease specialist. However, Plaintiff "outlin[es] nothing more than past instances of harm as well as [implying] the speculative *possibility* of future harm." *Milhouse v. Heath*, No. 15-01400, 2016 WL 836126, at *3 (M.D. Pa. Jan. 29, 2016), *report and recommendation adopted*, No. 15-1400, 2016 WL 827128 (M.D. Pa. Mar. 3, 2016), *appeal dismissed* (June 15, 2016).

From the time of Plaintiff's second surgery with Dr. Undavia on May 4, 2017, to the filing of his complaint in February of 2018, Plaintiff makes no allegation that prison officials or medical staff have treated him improperly or prevented him from receiving treatment from Dr. Undavia or otherwise. (ECF No. 1, at 56–64). Accordingly, because Plaintiff has not demonstrated that there is a presently existing threat to his safety or a likelihood of success on the merits, the Court denies Plaintiff's motion for a preliminary injunction. *See Groupe*, 774 F.3d at 197.

## V. CONCLUSION

For the reasons set forth above, the Court will dismiss Plaintiff's Complaint without prejudice. Additionally, the Court will deny Plaintiff's request for a preliminary injunction. An appropriate Order follows.


Dated: October 10, 2018            s/Robert B. Kugler
                                   ROBERT B. KUGLER
                                   United States District Judge