UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

RECEIVED

MAY 15 2019

| | | |
|---|---|---|
| Vincent P. Alexis<br>Plaintiff<br><br>v.<br><br>Ravi Sood, MD (Contractor,Doctor);<br>Deborah Schult, Medical Director BOP/DOJ;<br>M.D. Carvajal, N.E. Regional Director BOP/DOJ;<br>Mr. Haczynski, (Contractor) Health Svc. Administrator FCI Ft. Dix;<br>Rolando Newland, MD (Contractor,Doctor) Clinical Director Ft. Dix;<br>N. Turner-Foster, MD (Contractor,Doctor) Clinical Director Ft. Dix;<br>Sam Syjongtian, MLP (Contractor);<br>Ian Connors, Administrator BOP/DOJ;<br>J.L. Norwood, Regional Director BOP/DOJ;<br>G. Travers, (Contractor) Health Svc. Administrator FCI Ft. Dix;<br>J. Wilk, (Contractor) Health Service Administrator FCI Ft. Dix;<br>P. Tyas, NP-C (Contractor);<br>Christina Mello, NP-BC (Contractor);<br>T. Hoey, NREMT-P (Contractor);<br>Saint Francis Medical Center (Contractor);<br>William Ross, MD (Contractor);<br>J. Hollingsworth, (Contractor) Warden FCI Ft. Dix/BOP/DOJ;<br>David Ortiz, (Contractor) Warden FCI Ft. Dix/BOP/DOJ;<br>John Doe # 1 Operations Lieutenant FCI Ft. Dix;<br>John Doe # 3 Nurse (Contractor);<br>All Defendants sued in their Individual & Official Capacity | Civil #<br>WILLIAM T WALSH 18-CV-02099<br>RBK-KMW<br><br>Amended<br>Complaint<br>(Fed Crim.P.<br>15(a)(2))<br><br>Jury Trial<br>Demand<br><br>May 2, 2019 | |

## AMENDED COMPLAINT

Preliminary Statement: 1983 Bivens Act [sic] "42 U.S.C. 1983."

This is a civil action filed by Vincent P. Alexis, a federal

prisoner located at FCI Fort Dix, New Jersey, asking for damages

(for) injury sustained in medical negligence (which continues to

this very day) that constitute Deliberate Indifference [sic] re-

sulting in permanent damage to Plaintiff's maxillary sinus and

lungs, and ongoing, daily, pain & suffering.

## Jurisdiction

[1]    This Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional Rights under U.S.C. §1331 & 1343.

## Parties

[2]    **Plaintiff: Vincent P. Alexis**, 19213-052, is a Federal Prisoner currently being housed at FCI Fort Dix, P.O. Box 2000, J.B. MDL, New Jersey 08640, & is suing **Defendants Sood, Schult, Carvajal, Haczynski, Newland, Turner-Foster, Syjongtian, Connors, Norwood, Travers, Wilk, Tyas, Mello, Hoey, Saint Francis Medical Center, Ross, Hollingsworth, Ortiz, John Doe # \, & John Doe # 3,** in their individual & official capacities under Bivens & under the Civil RICO Statute, & for violations of the 1st, 5th, 6th, & 8th Amendments of the U.S. Constitution as seen supra & as follows.

[3]    **Defendant Ravi Sood**, contract Medical Doctor for Fort Dix Medical Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & following reasons with-out any transparent corresponding accountability.

2

[4]   **Defendant Deborah Schult**, Medical Director for the BOP, actress under color of Federal law, is sued in her individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[5]   **Defendant M.D. Carvajal**, is the Northeast Regional Director for the BOP/DOJ, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[6]   **Defendant Haczynski**, contract Health Service Administrator for Fort Dix Health Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[7]   **Defendant Rolando Newland**, contract Clinical Director for Fort Dix Medical Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

3

[8]    **Defendant Turner-Foster**, contract Clinical Director for Fort Dix Medical Dep't, actor under color of Federal law, is sued in her individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[9]    **Defendant Sam Syjongtian**, contract MLP for Fort Dix, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[10]    **Defendant Ian Connors**, Administrator for the BOP/DOJ, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[11]    **Defendant J.L. Norwood**, Regional Director for the BOP/DOJ, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

4

[12]  **Defendant G. Travers**, contract Health Service Administrator for Fort Dix Health Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[13]  **Defendant J. Wilk**, contract Health Service Administrator for Fort Dix Health Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[14]  **Defendant P. Tyas**, contract NPC for Fort Dix Medical Dep't, actress under color of Federal law, is sued in her individual and official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[15]  **Defendant Christina Mello**, contract NP-BC for Fort Dix Medical Dep't, actress under color of Federal law, is sued in her individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

5

[16]  **Defendant T. Hoey**: contract NREMT-P for Fort Dix Medical Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[17]  **Saint Francis Medical Center**: contractor for FCI Fort Dix, subcontractor under color of Federal law, is sued in their business & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[18]  **Defendant William Ross**: formerly known as John Doe #2, contract Medical Doctor for Fort Dix Medical Dep't, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[19]  **Defendant J. Hollingsworth**: contract Warehouseman for Federal inmates (Warden) for Fort Dix Correctional Facility, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[20]  **Defendant David Ortiz:** contract Warehouseman for Federal inmates (Warden) for Fort Dix Correctional Facility, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[21]  **Defendant John Doe #1 - Operations Lieutenant:** the lieutenant on duty at FCI Fort Dix (West Compound) at 4 AM on March 22, 2014, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding

[22]  **Defendant John Doe #2 - Nurse:** the Nurse on duty at Fort Dix Medical Dep't on July 8, 2014, actor under color of Federal law, is sued in his individual & official capacity under both Bivens & Civil RICO for violations of the 1st, 5th, 6th, & 8th Amendments of the United States Constitution for all of the above & the following reasons, without any transparent corresponding accountability.

[23]  Plaintiff & all Defendants are citizens of different states, & this Court has supplemental jurisdiction pursuant to "28 U.S.C.§1367" for relief.

7

## Legal Standards

[24]    Legal Standard Number 1 -- This action complaint against Defendants cannot be dismissed under Civil Rule 12(b)(6) or 12(b)(1) because Plaintiff has stated a sufficient claim under Rule 8(a).

[25]    Legal Standard Number 2 -- Plaintiff need not exhaust any BOP remedies before a civil action can be filed in the Court; see Supreme Court Ruling "Darby v. Cisneros" (1993) 125 L.Ed 2d 113.


[26]    Legal Standard Number 3 -- "State of Mind & Due Process of Defendants". As a proximate result of all Defendant's conduct, including all Wardens implemented in this civil action for poor training of their employees & failure to ensure that BOP policy/procedure was appropriately followed.  All Defendants have breached their contracts [sic] 28 U.S.C. §1367.

8

[27]  **Defendant Ravi Sood, MD:** Defendant Sood failed to follow BOP policy, provide medical & surgical care which meets current & acceptable standards of care, follow prescribed plans of treatment, arrange for appropriate rechecks with specialists & surgeons, & to provide adequate pain relief & infection control.

Defendant was repeatedly deliberately indifferent to Plaintiff's serious medical & surgical needs & this directly resulted in my experiencing permanent injuries and an enormous amount of pain & suffering.  This deliberate indifference continues to the present day, & Plaintiff continues to experience pain & suffering on a daily basis.

Defendant failed to recognize in March of 2014 that Plaintiff was seriously ill.  Plaintiff was misdiagnosed , & even as his condition became life-threatening, Defendant was deliberately indifferent to Plaintiff's needs, repeatedly sending him back to his housing unit without appropriate care.  When Plaintiff finally did arrive at the ER, Infectious Disease Specialist Syed A. Husain noted in his medical notes, "The prognosis of the patient remains guarded."

Defendant failed to recognize basic Lyme Disease symptoms, & was deliberately indifferent to Plaintiff's historical chronic Lyme Disease condition, accusing him of "Faking it."

Defendant was deliberately indifferent to Plaintiff's uncontrolled maxillary sinus infection, which wasn't drained surgically until May 4, 2017.  The sinus is now filled with extensive scar tissue & bleeds almost every day.  The after-care has been almost non-existent

9

and the nasal steroid (Flonase) which helps control the inflammation is now being withheld from the Plaintiff (as is the ENT care which the Plaintiff desperately needs).

**Legal Standard 4** -- A) This action constitutes Deliberate Indifference by Defendant Sood for medical negligence & neglect (for not properly evaluating & treating the inmate [Alexis] for life-threatening illness); See <u>Hicks v. Frey, 992 F.2d 1450, 1456-58 (6th Cir.1993)</u>. B) Breach of Medical Contract - The (contract) Medical Doctor failed to perform as required under the contract. C) Plaintiff suffers from intentional infliction of emotional distress as a result from the permanent injuries that were inflicted upon him. D) Violation(s) of BOP policy, Deliberate Indifference of mere negligence (carelessness) & actual malice (intent to cause harm) that amounts to recklessness. The Supreme Court has recently held in <u>Farmer v. Brennen</u> that in an Eighth Amendment violation, a prison official can be found reckless (or) "Deliberately Indifferent" for medical neglect.

[28]   **Defendant Deborah Schult, Medical Director**: Defendant Schult at the BOP Central Office was made aware of Plaintiff's concerns via a BP-11/Administrative Remedy. She ignored his concerns & failed to ensure that the BOP staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control.

10

When Plaintiff notified the BOP Central Office & Office of Internal Affairs (on/about May 16, 2018) of his plight, & of this Bivens complaint, the BOP quickly retaliated against him.  On May 30, 2018 they suddenly cancelled Plaintiff's June recheck with his surgeon (which was already approved).  Once again, they deliberately interrupted a prescribed plan of treatment & left Plaintiff without the post-operative specialist care which is needed in order to avoid/minimize scar tissue formation.

**Legal Standard 5** -- This constitutes as Deliberate Indifference for failure to treat inmate.  See; <u>Waldrop v. Evans, 871 F.2d at 1033</u>.

[29]    **Defendant M.D. Carvajal, NE Regional Director**: Defendant Carvajal, at the NE Regional Office was made aware of Plaintiff's concerns via a BP-10/Administrative Remedy.  He ignored Plaintiff's concerns & failed to ensure that his subordinates followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control.

Defendant conspired with other Defendants (in an attempt at damage control) to delay/cancel/interrupt prescribed plans of treatment after being made aware of Plaintiff's concerns.

**Legal Standard 6** -- This constitutes as Deliberate Indifference. See; <u>Weeks v. Chaboudy, 984 F.2d 185, 187 (6th Cir.1993)</u>.

[30]   **Defendant Haczynski, Health Service Administrator:** Defendant Haczynski ignored Plaintiff's complaints that he was continually scheduled incorrectly with Princeton Eye & Ear, resulting in his first four appointments (March 16, 2015, June 3, 2015, August 21, 2015 and November 9, 2015) being of no help to him, since his surgeon (Doctor Undavia) was not in the office.  As a result of his Deliberate Indifference, Plaintiff was not seen/rechecked by his surgeon during 2014 or 2015.  This failure directly allowed scar tissue to form, unchecked, & directly resulted in Plaintiff experiencing an enormous amount of pain & suffering and the need for a second surgery (which was performed by Dr. Undavia on May 4, 2017) in order to remove the scar tissue.

Defendant conspired with other defendants to delay/cancel/interrupt prescribed plans of treatment.

**Legal Standard 7** -- This clearly constitutes as Deliberate Indifference for failure to provide adequate medical care.  See; Hill v. Marshall, 962 F.2d at 1214, 113 S.Ct. 2992 (1993).

[31]   **Defendant Rolando Newland, MD:** As Clinical Director at FCI Fort Dix, Defendant Newland failed to ensure that his medical staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists and surgeons, and provided adequate pain relief & infection control.

**Legal Standard 8** -- This constitutes as Deliberate Indifference. See; Rivas v. Freeman, 940 F.2d 1491, 1495-96 (11th Cir.1991).

[32]    **Defendant N. Turner-Foster, MD**: As Clinical Director at FCI Fort Dix, Defendant Turner-Foster failed to ensure that her medical staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control. **Legal Standard 9** -- This constitutes as Deliberate Indifference. See; Rivas v. Freeman, 940 F.2d 1491, 1495-96 (11th Cir.1991).

[33]    **Defendant Sam Syjongtian, MLP**: Defendant Syjongtian failed to follow BOP policy, provide medical & surgical care which meets current & acceptable standards of care, follow prescribed plans of treatment, arrange for appropriate rechecks with specialists and surgeons, & to provide adequate pain relief & infection control.

On December 4, 2014 Defendant was grossly negligent & deliberately indifferent to Plaintiff's illness during an appointment - stating to him, "I only have 18 months left. I don't care," & refused to offer any care for Plaintiff's obviously serious condition. **Legal Standard 10** -- This constitutes Deliberate Indifference and neglect. See; West v. Keeve, 571 F.2d 158, 162 (3rd Cir.1978) (denial of access to a doctor capable of assessing the need for post-operative treatment stated a Constitutional claim).

[34]    **Defendant Ian Connors, Administrator**: Defendant Connors at the BOP Central Office was made aware of Plaintiff's concerns via a BP-11/Administrative Remedy. Defendant ignored his concerns & failed

13

to ensure that the BOP staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control.

When Plaintiff notified the BOP Central Office & Office of Internal Affairs (on/about May 16, 2018) of his plight, & of this Bivens complaint, the BOP quickly retaliated against him.  On May 30, 2018 they suddenly cancelled Plaintiff's June recheck with his surgeon (which was already approved).  Once again, they deliberately interrupted a prescribed plan of treatment & left Plaintiff without the post-operative specialist care which is needed in order to avoid/minimize scar tissue formation.

**Legal Standard 11** -- This constitutes as Deliberate Indifference for failure to treat inmate.  See; Waldrop v. Evans, 871 F.2d at 1033.

[35]    **Defendant J.L. Norwood, NE Regional Director:** Defendant Norwood, at the NE Regional Office was made aware of Plaintiff's concerns via a BP-10/Administrative Remedy.  He ignored Plaintiff's concerns & failed to ensure that his subordinates followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control.

Defendant conspired with other Defendants (in an attempt at damage control) to delay/cancel/interrupt prescribed plans of treatment after being made aware of Plaintiff's concerns.

**Legal Standard 12** -- This constitutes as Deliberate Indifference. See; Weeks v. Chaboudy, 984 F.2d 185, 187 (6th Cir.1993).

14

[36]   **Defendant G. Travers, Health Service Administrator:** Defendant Travers ignored Plaintiff's complaints that he was continually scheduled incorrectly with Princeton Eye & Ear, resulting in his first four appointments (March 16, 2015, June 3, 2015, August 21, 2015 and November 9, 2015) being of no help to him, since his surgeon (Doctor Undavia) was not in the office.  As a result of his Deliberate Indifference, Plaintiff was not seen/rechecked by his surgeon during 2014 or 2015.  This failure directly allowed scar tissue to form, unchecked, & directly resulted in Plaintiff experiencing an enormous amount of pain & suffering and the need for a second surgery (which was performed by Dr. Undavia on May 4, 2017) in order to remove the scar tissue.

Defendant conspired with other Defendants to delay/cancel/interrupt prescribed plans of treatment.

**Legal Standard 13** -- This clearly constitutes as Deliberate Indifference for failure to provide adequate medical care.  See <u>Hill v. Marshall</u>, 962 F.2d at 1214, 113 S.Ct. 2992 (1993).

[37]   **Defendant J. Wilk, Health Service Administrator:** Defendant Wilk ignored Plaintiff's complaints that he was continually scheduled incorrectly with Princeton Eye & Ear, resulting in significant delays and interruptions in his prescribed plan of treatment.  This failure directly allowed scar tissue to go unchecked, & directly resulted in Plaintiff experiencing an enormous amount of pain & suffering.

Defendant conspired with other Defendants to delay/cancel/interrupt prescribed plans of treatment.

**Legal Standard 14** -- This clearly constitutes as Deliberate Indifference for failure to provide adequate medical care.  See <u>Hill v. Marshall</u>, 962 F.2d at 1214, 113 S.Ct. 2992 (1993).

[38]    **Defendant P. Tyas, NP-C**: Defendant Tyas failed to provide adequate follow-up care, & she failed to follow BOP policy, provide medical & surgical care which meets current & acceptable standards of care, follow prescribed plans of treatment, & to provide adequate pain relief & infection control.

**Legal Standard 15** -- This constitutes as Medical Neglect & Negligence for failure to properly diagnose.  See; Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir.1990).

[39]    **Defendant Christina Mello, NP-BC**: Defendant Mello failed to provide adequate follow-up care, & she failed to follow BOP policy, provide medical & surgical care which meets current & acceptable standards of care, follow prescribed plans of treatment, & to provide adequate pain relief & infection control.

**Legal Standard 16** -- This constitutes as Medical Neglect & Negligence for failure to properly diagnose.  See; Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir.1990).

[40]    **Defendant T. Hoey, NREMT-P**: Defendant Hoey ignored Plaintiff's complaint (upon returning from his June 3, 2015 ENT appointment) that the Fort Dix Medical Dep't/Health Service Administrator(s) continually scheduled his ENT recheck appointments without requesting/scheduling the appointment(s) with the Plaintiff's surgeon (Dr. Undavia).  As a result of the scheduling failures, & Defendant Hoey's Deliberate Indifference, Plaintiff was not seen/rechecked by his surgeon until February 11, 2016 (23 months post-operatively).

**Legal Standard 17** -- This clearly constitutes as Deliberate Indifference for failure to provide adequate medical care.  See; Hill v. Marshall, 962 F.2d at 1214, 113 S.Ct. 2992 (1993).

16

[41] **Defendant Saint Francis Medical Center**: Defendant failed to properly supervise its Physician (Defendant William Ross, MD) and to ensure that its staff followed hospital policy & procedures.

**Legal Standard 18** -- This action constitutes as Deliberate Indifference. See; Langley v. Coughlin, 715 F.Supp 522, 540 (S.D.NY 1988).

[42] **Defendant William Ross, MD (Formerly John Doe #2)**: Defendant Ross is a Saint Francis Medical Center Radiologist who failed to correctly place emergency, bilateral, chest tubes on/about March 31,2014. Defendant failed to verify that the chest tubes were in the correct location after placement (using radiographs &/or Fluroscopy), & Defendant sent Plaintiff back to his hospital room without confirmation that the chest tubes were placed correctly & working properly. As a result, Plaintiff's right-sided pneumothorax/pleural abscess could not properly drain, & Plaintiff had to undergo major thoracic surgery in order to fully evacuate the pneumothorax/abscess.

**Legal Standard 19** -- This action constitutes Deliberate Indifference. See; Langley v. Coughin, 715 F.Supp. 522, 540 (S.D.NY 1988).

[43] **Defendant J. Hollingsworth, Warden**: As Warden, Defendant Hollingsworth failed to ensure that his staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate rechecks with specialists & surgeons, & provided adequate pain relief & infection control.

Defendant conspired with other Defendants to delay/cancel/interrupt prescribed plans of treatment after being made aware of Plaintiff's concerns via a BP-9/Administrative Remedy.

**Legal Standard 20** -- This constitutes as Deliberate Indifference. See; United States of America v. Terrence Pendergrass, 648 Fed. Appx.29; 2016 U.S. App. LEXIS 7664.

[44]   **Defendant David Ortiz, Warden:** As Warden, Defendant Ortiz failed to ensure that his staff followed BOP policy, provided medical & surgical care which meets current & acceptable standards of care, followed prescribed plans of treatment, arranged for appropriate re-checks with specialists & surgeons, & provided adequate pain relief & infection control.

Warden Ortiz deliberately lied to New Jersey Senator Cory A. Booker on two occasions when Senator Booker requested information about Plaintiff's medical care at Fort Dix.

Defendant conspired with other Defendants to delay/cancel/interrupt prescribed plans of treatment after being made aware of Plaintiff's concerns through the Administrative Remedy Process.

**Legal Standard 21** ---This constitutes as Deliberate Indifference. See; United States of America v. Terrence Pendergrass, 648 Fed. Appx.29; 2016 U.S. App. LEXIS 7664.

[45]   **Defendant John Doe # 1, Operations Lieutenant/Lieutenant:** At 4 AM on Saturday March 22, 2014 this Defendant was Deliberately Indifferent to Plaintiff's serious medical needs. Defendant failed to follow BOP policy for After Hours Urgent Care, & he failed to call an ambulance when Plaintiff's condition became critical. Defendant's deliberate actions caused a significant delay in Plaintiff receiving aggressive, emergency, treatments, allowing his septic illness to worsen unchecked.

**Legal Standard 22** ---This action constitutes as Deliberate Indifference for failure to follow BOP policy. See; Connick v. Thompson, 563 U.S. 56, 61 (2011).

18

[46]   **John Doe #3, Nurse (Fort Dix):** On July 8, 2014 Defendant failed to ensure that Plaintiff's antibiotics were refilled. Plaintiff had just finished a course of antibiotics, and still had pus draining from his right nostril. Despite the fact that Plaintiff was obviously still ill, Defendant was Deliberately Indifferent to his serious medical needs and sent Plaintiff back to his housing unit, still ill, without any treatment. Plaintiff was told to, "Look for a call-out." That call-out occurred on September 11, 2014, 2 months later.

**Legal Standard 23** -- This constitutes as Deliberate Indifference for failure to properly screen the inmate. See; Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir.1982).

## Background

[47]  On **March 19, 2014** I became ill with a septic sinus infection. I went to the Fort Dix Medical Service for care.  Unfortunately, **Defendants Sood & Syjongtian** negligently failed to examine me, & I was sent back to my housing unit without medical treatment (Exhibit:EE).

[48]  On **March 20, 2014** I returned to the Ft. Dix Medical Service for care.  I was examined by L. DiMatteo, RN (Exhibit:E).  Nurse DiMatteo noted in the medical record that I had, "+1 Edema to R peri-orbit area.  Increased tenderness to palpation."  He also clearly comments that the "Plan of care was discussed with PCPT."  I was told to "Increase fluids, Tylenol/Motrin for pain, fever & discomfort, & will be placed on the call-out."  I was then sent back to my housing unit.

Approximately 2 hours later, as I sat in my room, I began to experience significant chest pain.  In addition, I became dyspnic & quickly experienced severe shortness of breath/light headedness. As I sat there, struggling to maintain consciousness, one of my room-ates ran downstairs & informed the unit officer of my crisis.  I was taken, on emergency, to the Ft. Dix Medical Service.  There, I was examined initially by **Defendant Syjongtian.**  He ran a number of EKG's

20

and took chest radiographs. He also ordered paranasal sinus rad-
iographs, which were to be taken the following day. I was placed
on oral antibiotics (Amoxicillin 500mg) & Acetaminophen.

Defendant **Syjongtian** reports in the medical record that he
"Reviewed & EKG with PCPT MD." Presumably, this is a typo, & he
meant to report that he reviewed the EKG with PCPT MD - Defendant
**Sood**. I did, infact, witness him do this as I lay on the treatment
bed. But **Defendant Sood** then left the treatment room. Defendant
**Sood** negligently failed to examine me until approximately 3:40 PM,
as he continued to see all of his regularly scheduled, routine,
appointments. When **Defendant Sood** finally did examine me, it was
approaching 4 PM & all of his staff had left for the day. Moreover,
I had to be back in my housing unit for the 4 PM count. Defendant
**Sood** simply did not have any time to spend with me.

The soft tissue swelling/skin discoloration about my right
eye was clearly visible early that morning. And **Defendant Sood**
knew that I had become more ill as the day went by - even briefly
loosing consciousness as I sat in my housing unit just before my
9:30 AM crisis.

I was seriously ill & I knew it. I asked **Defendant Sood**
to send me to the hospital. **Defendant Sood** refused to do so.

21

I was given no anti-inflammatories at all.  And I was again sent back to my housing unit after **Defendant Sood** informed me,

"It's nothing serious."

[49]    On **March 21, 2014** I again returned to the Ft. Dix Medical Service (Exhibit:F).  The infection had worsened significantly. It was becoming difficult for me to open my right eye due to the facial swelling/disfigurement.  **Defendant Sood** noted that I had, "Painful swelling with bluish discoloration of skin right maxilla extending to the nose & to the lower eyelid x2 days."  In addition, I was still experiencing chest pain & light headedness.  **Defendant Sood** also acknowledged this, noting in the medical record, "Atypical chest pain x2 days."

These clinical signs should have been alarming to any health care professional.  And when you also take into consideration the fact that I had momentarily lost consciousness in my room & that I was unable to walk unassisted from my housing unit to the Ft. Dix Medical Service the prior morning at 9:30, it should have been obvious that I was seriously ill.  Once again, I asked to be sent to the hospital.  And once again **Defendant Sood** refused to

22

send me to the hospital.  Despite the clear & obvious fact that my serious medical condition was rapidly becoming worse, & despite the fact that my clinical signs in no way pointed towards a diagnosis of acid reflux disease, **Defendant Sood** did diagnose me with Esophageal Reflux Disease (chronic), & he prescribed an acid-blocker (Ranitidine).  **Defendant Sood** told me that I needed,

> "Lifestyle changes, mindful awareness
> or meditation, & yoga."

**Defendant Sood** then sent me back to my housing unit, with no further treatment or diagnostics, negligently failing to do the sinus radiographs which were ordered from the previous day (those radiographs were not taken until **November 4, 2014** [Exhibits:F & M]). And when **Defendant Sood** sent me again back to my housing unit, he did so with the knowledge that my condition was rapidly becoming worse & that the very next day was Saturday, & that Ft. Dix had no MD or PA on duty over the weekend.

23

[50] By **Saturday March 22, 2014** my condition had become very serious. During the night I was unable to sleep. There was a fair amount of intermittent bleeding from my right nares, I was unable to open my right eye, & it was obvious to me that I was running a high fever.

At approximately 4 AM, I went to the unit officer's office & knocked on the door. As I entered his office, I stated, "I need to go to the hospital." He took one look at me & exclaimed, "My God." He proceeded to pick up the phone & called a lieutenant. Their conversation was very brief (approximately 10 seconds). The unit officer then hung up the phone & informed me that the lieutenant instructed me to go to the Ft. Dix Medical Service when they opened at 6:30 AM.

According to the Federal Bureau of Prisons policy regarding Urgent Medical & Dental Care (Exhibit:WW), for After Hours Urgent Care, "The Operations Lieutenant will contact the on-call Physician to discuss the case of the inmate. If needed, the on-call Physician will communicate directly with the inmate for triage purposes. If needed the on-call Physician will contact the on-call MLP to direct

24

them to report to the institution for the purposes of providing clinical attention to the inmate." The policy further states, "If the Medical Officer determines medical treatment is necessary & can be carried out by the MLP, the Medical Officer will call the MLP & direct the MLP to report to the institution. The Medical Officer can also determine either no action will be taken or that the inmate needs to go to the local hospital."

I was standing just feet from the unit officer when he called the lieutenant that Saturday morning. And I heard every word which the unit officer said quite clearly during that 10 second phone call. There can be no doubt that there was no discussion about calling the on-call Physician/Medical Officer. And most certainly I was not handed the phone to communicate directly with anybody. Nor were there any questions or discussions with me in regards to my medical illness. The unit officer simply hung up the phone after his brief conversation with the lieutenant & informed me that the lieutenant instructed me to go to the Ft. Dix Medical Service when they opened at 6:30 AM. And clearly, no MLP reported to the institution to provide care for me.

It's painfully obvious that the **Defendants** ignored their own policy regarding Urgent Medical & Dental Care. I was ex-amined by an EMT at approximately 6:45 on **Saturday March 22, 2014.** Once he saw me, he realized how ill I was, & called Dr. Sood & re-ceived authorization to send me to the hospital. I was finally sent to Saint Francis Medical Center (in Trenton, New Jersey). **Defendant John Doe #1** ignored my serious medical needs, deliberately ignoring BOP Policy, & deliberately choosing to not call an ambulance at 4 AM that morning.

25

Instead, he sent me to the hospital ER by BOP van. Because of this negligent delay, I didn't receive the aggressive treatment that I needed until approximately noon - an unnecessary delay of approximately 7.5 hours.

[51] I was examined in the ER at approximately noon on **Saturday March 22, 2014.** I underwent a battery of diagnostic tests, including blood work, urinalysis, radiographs, CT scans, EKG's, & blood cultures. The chest radiographs revealed opacities/nodules in both of my lungs. And blood cultures were positive for a dangerous bacteria, Staph Aureus. The ER physicians & specialists informed me that the Staph bacteria had showered my lungs with infection, & that the hematogenous spreading of the Staph was the cause of the acute chest pain & light headedness I experienced on the morning of **March 20, 2014.** Dr. Sood & MLP Syjontian negligently failed to realize this, misdiagnosed my illness, & failed to treat my serious illness in an appropriate & timely manner. As a result of **Defendant Sood's** gross negligence & treatment delays, the sepsis raged, uncontrolled, for over 48 hours, & irreparable harm had been done to my body.

An Infectious Disease consult was done by Syed A. Husain, MD (Exhibit:XX). Dr. Husain clearly notes in his medical notes that the chest radiographs which were taken on admission to the ER showed, "Multiple focal ill-defined opacities in both lung fields suspicious for an acute inflammatory or infectious process." He also comments that, "The patient is unable to open the eyelids because of the swelling." And he goes on to say, "The prognosis of the patient remains guarded."

26

[52] I was admitted to the hospital on the evening of March 22, 2014. I spent approximately 45 days there. Upon admission, I looked in the mirror in my room's bathroom. What I saw was horrifying - the facial disfigurement about my nose & right eye was so severe that I truly didn't recognize who I saw in the mirror.

[53] The swelling & inflammation about my right eye was now causing significant involvement of the nerves & muscles which control the movements of the eye. Within days, I experienced pronounced double vision, as my right eye was unable to function normally (Exhibit:YY).

In order to gain control over the sepsis & it's secondary effects, the hospital's physicians & Dr. Samir Undavia (an ENT specialist) recommended that I undergo sinus surgery, in order to establish drainage & remove the nidus for the infection.

[54] On March 27, 2014 I had surgery on my right maxillary sinus. Dr. Undavia performed this surgery. He clearly mentions in his surgery report (Exhibit:A) that there was, "Tremendous inflammation & granulation tissue," & that "The case became very difficult given how much necrotic tissue was everywhere..." These pathologic changes indicate chronicity, & are a direct result of the **Defendants** negligence the week before.

[55] On March 31, 2014 both of my lungs collapsed. The infection had eroded through the pleura, resulting in a bilateral pneumothorax.

27

Emergency chest tubes were placed, in an attempt to remove the air & abscess from the pleural space. **Defendant Ross** negligently failed to position the chest tubes correctly. As a result, I underwent a second procedure to reposition both chest tubes. That procedure report (Exhibit:B) clearly states, "The bilateral chest tubes were pulled completely into the pleural space in the thoracic bases & then repositioned along the lateral aspect. On prior lateral imaging, the chest tubes were noted to be within the major fissures which limited their ability to fully evacuate the bilateral pneumothoraces." During the initial, emergency, placement of the chest tubes, the negligence of Defendants **Ross** & **Saint Francis Medical Center** resulted in a situation where the right pneumothorax/abscess could not properly drain. As a result, the infection was now life-threatening, & I would have to undergo major thoracic surgery in order to fully evacuate the pneumothorax/abscess involving my right lung/thorax.

[56] On **April 7, 2014** I underwent major thoracic surgery and a blood transfusion.  The surgery was performed by Drs. Shariff & Seinfeld. The surgery report (which I was unable to obtain until **December 8, 2017**) shows that I underwent a right thoracotomy, decortication of the right lung, & drainage of lung abscesses (Exhibit:C).  The surgery report clearly notes that I had, "Multiple lung abscesses involving the right middle lung lobe & the right upper lobe has golf [ball] size lung abscesses," & that upon entering the pleural cavity, the surgeons encountered, "A pocket of pus in the chest cavity" (Exhibit:C).

Nobody ever informed me that my lungs were filled with multiple abscesses, many of which were the size of golf balls.  For over 3 years, I complained to the **Defendants** that I was short of breath & was experiencing light-headedness when I exerted myself.  That entire

29

time, this important information was intentionally withheld from me. This critical report was not provided to me by the **Defendants** when I obtained my Ft. Dix medical records. I didn't know about the seriousness, nor the extent, of the disease which ravaged my thorax until **December 8, 2017** when I finally received my medical records (with the help of the New Jersey Board of Medical Examiners) from St. Francis Medical Center, (Exhibit:ZZ).

This important information was also withheld from Dr. Undavia. I know this to be true because on **December 1, 2016,** when I was examined by Dr. Undavia at Princeton Eye & Ear, he was visibly surprised when I mentioned to him that both of my lungs had collapsed due to sepsis four days after he performed my initial sinus surgery on **March 27, 2014.** He was even more surprised when I then informed him that I had thoracic surgery on **April 7, 2014.** Dr. Undavia admitted to me, "I did not know that."

[57] The thoracic surgery became necessary because of the negligence & treatment delays committed by the Ft. Dix Medical Service and the **Defendants** as described above. The sepsis was negligently allowed to rage for over 72 hours, from **March 19, 2014** until the afternoon of **March 22, 2014.** As a result of the hematogenous seeding of the Staph bacteria, abscesses formed throughout both of my lungs & the prognosis was "Guarded" (Exhibit:XX). As these abscesses formed & grew in size, normal lung parynchyma was destroyed. That normal alveolar tissue has been replaced with scar tissue. And this scar tissue is unable to

30

participate in normal oxygen exchange.  As a result, I've experienced a serious, & permanent, impairment of pulmonary function.  For the past _57 months_, I've experienced an alarming degree of light-headedness whenever I exert myself.


[58]  I was discharged from the hospital on **May 5, 2014.**  On **May 8, 2014** Dr. Sood withheld the hospital discharge instructions from me. He negligently failed to provide me with the Ferrous Gluconate (Iron) that was prescribed by the hospital, even though I was still anemic (Exhibit:SS), & he negligently failed to provide me with the Sennosidas-Docusate (an anti-inflammatory corticosteroid) that was prescribed by the hospital (Exhibit:P).  He did, however, negligently continue to prescribe Ranitidine, which he had placed me on approximately 50 days earlier when he misdiagnosed my sepsis as Esophageal Reflux Disease (chronic).

In addition, upon review of my medical records from **May 8, 2014** I noticed that Dr. Sood noted that I had, "Arthroscopic ligament tear repair right knee 12/2012," and a "History of concussion - unconsciousness x3 days 04/2001 due to MVA" (Exhibit:G).  Oddly, I've never had knee surgery & Dr. Sood has never once examined my knee.  And I've never had a history of concussions, or a period of unconsciousness, or a MVA in April of 2001.  Dr. Sood was obviously concentrating on other issues when I saw him for my post-hospitalization exam & complained of severe exercise intollerance, difficulty breathing from my right nostril, nasal sinus pressure & pain, sinus headaches, and chest pain. Dr. Sood did schedule me for chest radiographs, however.

31

[59]    On May 14, 2014 I had chest radiographs taken at the Ft. Dix Medical Service.   Those radiographs revealed significant pathology.   The radiology report, written by Charles White, MD (University of Maryland) states: "Abnormal.   interval development of nodular densities in both mid and upper lung zones - ?infection, ?septic emboli, less likely metastases - rec further evaluation," (Exhibit:H).   Defendant Sood negligently failed to do any further evaluation, despite the knowledge that on May 8, 2014, on my post-hospitalization exam, I complained of difficulty breathing from my right nostril, severe exercise intollerance, & chest pain (Exhibit:G).

[60]    On June 21, 2014 I was forced to return to work at Ft. Dix. Defendant Sood failed to understand that I was still quite ill, & he refused to renew/extend my medical idle.

[61]    At approximately 2 PM on June 25, 2014 I was at work when I began to experience severe right nasal pressure & pain.   My boss,

CO Cusick, called over to the Ft. Dix Medical Service, and EMT Gibb instructed me to come right in.  Mr. Gibb (with a PA's authorization) placed me on a 14 day course of Amoxicillin.  Within hours of beginning the antibiotic, pus was draining from my right nares.  And over those 14 days the sinus pain & pressure improved as pus, intermittantly, continued to drain from my right nares.

[62]    On July 8, 2014 I went to Ft. Dix Medical Service's sick call.  I explained to Defendant John Doe #3 that I was out of anti-biotics.  I explained clearly that the treatment had helped, & that I still had pus draining intermittantly from the right nares.  Defendant John Doe #3 did not refill the antibiotics & he/she failed to take action to ensure that Defendant Sood refilled the anti-biotics.  I was sent back to my housing unit, still ill, & told, "Look for a call-out."

[63]    That call-out occurred on September 11, 2014, two months later.  I was examined by Defendant Tyas.  She negligently failed to offer proper treatment/diagnostics.  Defendant Tyas sent me back to my housing unit & instructed me to "Buy a decongestant from commissary," (Exhibit:I).  Oddly, the Ft. Dix Commissary does not sell decongestants.

33

[64]    On **October 31, 2014** I saw Jose Ravago, MLP.  Mr. Ravago ordered radiographs of my chest & sinuses.  Those radiographs were taken on **November 4, 2014.**  The technician who took the radio- graphs let me view the sinus radiographs on the screen.  I was horrified by what I saw.  The right maxillary sinus was fully opacified (Exhibit:M).  There was no doubt about what I saw - I'm an experienced veterinarian, & I've viewed thousands of radiographs (including many radiographs of humans).  We were trained in school to compare what we were looking at with the "built in normal." So I immediately noticed the normal left side, & the clearly diseased right side.  At that moment, I knew that my condition was still very serious.  And I knew that I had to submit a BP-8 in order to receive proper medical care.

Mr. Ravago knew it was serious as well.  He immediately placed me on a potent antibiotic - Augmentin.

[65]    On **November 6, 2014** I submitted a BP-8 through my unit counselor (Exhibit:J).

[66]    On **November 10, 2014** I saw Defendant Sood.  Although he acknowledges in the medical notes that I "Had a course of anti-

34

biotics with some relief" (Exhibit:K), he negligently refused to refill the Augmentin which was prescribed by Mr. Ravago on **November 5, 2014.** An infection of the Maxillary sinus (which by nature will have a lot of boney involvement) of the severity & chronicity that afflicted my body, should be treated with long-term antibiotics. Instead of persuing aggressive treatment options, Defendant **Sood** said to me,

"There's nothing I can do."

[67]   On **November 13, 2014** I went to sick-call in order to have the antibiotic refilled. I was unable to get the Augmentin refilled.

[68]   On **November 14, 2014** I ran out of antibiotics. So on the following day, **November 15, 2014** I returned to medical. Once again, I was unable to get the Augmentin refilled.

[69]   On **November 17, 2014** I received a response to the **BP-8** (Exhibit:J). Defendant **Travers** made no mention of Defendant **Sood's** treatment plan, & he failed to show any understanding of what I'd been through or was currently experiencing. The Ft. Dix Medical Service, & in particular Defendant **Sood**, was well aware of my concerns. They were made fully aware that when I blew my nose,

35

I still had blood & pus coming from the right nares.  And they were made fully aware that the drainage was intermittent, & quite often the drainage was back, into my naso-pharynx & not out of the nostril.  The nasal sinus radiographs taken on November 4, 2014 showed conclusive evidence that my complaint(s) were genuine, & that my condition was still serious.  Nevertheless, I was negligently taken off antibiotics once again.

[70]    On November 20, 2014 I submitted a BP-9 through my unit counselor (Exhibit:L).

[71]    On November 25, 2014 I obtained a copy of the radiology report for the chest radiographs which were taken on November 4, 2014 (see point 64 above).  That radiology report, written by Aletta Ann Frazier, MD (University of Maryland), clearly states, "Abnormal. resolved nodular opacities except for residual right apical opacity; cannot exclude residual infection; small residual bilateral pleural effusions" (Exhibit:M).  I was obviously very concerned to find out that there could still be residual infection present in my chest.  I was shocked to learn that both of my lungs were still plagued by pleural effusion.

36

Defendant Sood received this report on/about November 4, 2014. He was negligent in his duty because he never told me about these significant changes, despite the fact that I had consistently complained about chest pain & severe exercise intollerance/shortness of breath. I only found out about these results because I took the initiative & picked up a copy of Dr. Frazier's radiology report.

[72]     On December 4, 2014 I was examined by Defendant Syjontian, MLP. I discussed my concerns (the radiographic changes Dr. Frazier mentioned in her radiology report, as well as the clinical ailments I've described) with Defendant Syjontian. He then said to me,

"I only have 18 months left, I don't care."

Defendant Syjontian negligently refused to offer any care for my obviously serious condition, and sent me back to my housing unit.

[73]     On December 10, 2014 I was called to the Ft. Dix Medical Service. Defendant Travers informed me that I would "Have a CT scan done in 1 or 2 days." Defendants Sood, Travers, & Newland were negligent in their duty - this CT scan was not performed until January 22, 2015 (at RWJ University Hospital. Exhibit:N).

37

[74]    On **December 13, 2014** I suffered prolonged bleeding from my right nares while in my housing unit.  After approximately 4 hours of intermittent bleeding, I informed the unit officer.  I was seen at medical, & the bleeding stopped without their intervention.  The concerns & specifics of my history of such bleeding are well documented in my **BP-10** (Exhibit:O), & in the medical notes.

[75]    On **December 16, 2014** I was seen by Defendant Mello. She examined me & noted that I had swollen tonsilur lymph nodes. I was instructed to continue using the saline rinse & the hypertonic saline rinse, & to take the Claritin at bed-time.  Defendant Mello informed me that she would be seeing me every 30 days for follow-up.  And **Defendant Mello** negligently failed to do so.

[76]    Also on **December 16, 2014**, Defendant Sood prescribed a 14 day treatment of Augmentin, approximately 3 hours after I was seen by **Defendant Mello**.  Unfortunately, neither **Defendant Sood** nor **Defendant Mello** informed me of this change/addition to my treatment. Since I had left the Ft. Dix Medical Service 3 hours earlier, I had no way of knowing about the antibiotics. The prescription was

38

handed to me on December 23, 2014 when I went to pill-line to pick up other medications.

[77]    On December 22, 2014 I saw Defendant Sood.  As I was explaining my concern about the severe right nasal congestion & draining to Defendant Sood, he looked up at me from his computer & asked,

"Is this a new problem?"

Clearly, Defendant Sood negligently failed to understand the condition that had, at that point, plagued me for 9 months.

[78]    On December 23, 2014 I had chest radiographs taken at the Ft. Dix Medical Service.  The radiology report, written by Aletta Ann Frazier, MD (University of Maryland) clearly states that there are "Resolving linear opacities," & recommended continued surveillance. Unfortunately, Defendants Sood, Newland, Travers, & Hollingsworth negligently failed to provide the pulmonologist (Dr. Steeger - see point 82 below) with the radiographs so that he could review the abnormalities.

39

[79]   On January 5, 2015 I finished the Augmentin.  I was once again off antibiotics, despite the fact that I was clearly ill. I was still experiencing severe right nasal congestion & intermittent drainage from the nares.

[80]   On January 6, 2015 I received a response from the Warden to my BP-9 (Exhibit:L).  Defendant Hollingsworth defended the actions of his staff.  Defendant Hollingsworth negligently ignored many serious failures committed by his staff.  He ignored their failure to send me to the hospital ER in a timely manner.  And he ignored their failure to call an ambulance early in the morning of March 22, 2014.  Defendant Hollingsworth ignored the staff's failures to perform the appropriate diagnostics at the appropriate time (for example, the nasal sinus radiographs that Defendant Sood ordered on March 20, 2014 were not taken that day [or even the following day, March 21, 2014], the radiographs weren't taken until November 11, 2014).  Defendant Hollingsworth ignored his staff's failures to follow-up on abnormalities found on diagnostics (for example, the pathologic changes found on the radiographs taken on May 14, 2014 (Exhibit:H) & November 4, 2014 (Exhibit:M) were not appropriately addressed).  And Defendant Hollingsworth ignored his staff's failure

to recheck my serious medical condition in a timely manner (I was treated for the chronic infection again on June 25, 2014 & was placed on antibiotics for 14 days.  The recheck exam for this illness was approximately 2.5 months later, on September 11, 2014). Defendant Hollingsworth was negligent in his duties by ignoring a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[81]    On January 12, 2015 I submitted a BP-10 through my unit counselor (Exhibit:O).

[82]    On January 16, 2015 I was examined by Joseph R. Steeger, MD (a pulmonologist.  Exhibit:Q).  Dr. Steeger also examined me on March 26, 2015 (Exhibit:R), & on July 16, 2015 (Exhibit:S). Defendant Sood & the Ft. Dix Medical Service twice failed to provide Dr. Steeger with the chest radiographs so that he could more thoroughly evaluate my condition (Exhibits:R & S).  Despite this handicap, Dr. Steeger was confident in his diagnosis; "Atypical chest pain secondary to involvement of the nerve during the thoracotomy on the right hemi-thorax causing pain & discomfort along the dermatome of that inter-

41

costal nerve" (Exhibit:Q), & "Recurrent pleuritic chest pain/ costochondritis" (Exhibit:S).

Dr. Steeger instructed me to continue taking the nonsteroidal anti-inflammatory medication for the chest pain. When I expressed my concern to Dr. Steeger that I was having chest pain 15 months after the thoracotomy, he replied "If the pain's still present one year after the thoracotomy, it's likely permanent." Dr. Steeger did order chest radiographs to be taken prior to his July 16, 2015 exam. Those radiographs were taken on June 29, 2015. The radiology report written by Jeffrey Galvin, MD (University of Maryland) states: "Negative except for: stable band like scar at right apex" (Exhibit:T). This finding, when taken with Dr. Steeger's diagnosis & with his statement to me, indicates that the chest pain which I still exper-ience daily, is likely a permanent affliction. And it's the direct result of the Defendants negligence, misdiagnosis, & repeated treat-ment delays.

[83]   On January 22, 2015 I had a CT scan of my sinuses performed at RWJ University Hospital (Hamilton, NJ). The radiology report (signed by Naomi Schwarz, radiologist) notes significant pathology involving my right maxillary sinus, including evidence of obstruction (Exhibit:N).

42

[84]    On **January 29, 2015** I experienced bleeding from my right nares for 13 hours.  And on **February 2, 2015** I experienced a 5 hour nose bleed with draining pus.  That evening, I spoke to EMT Gibb at pill-line, & he examined me.  Mr. Gibb restarted the Augmentin & Ibuprofen for 21 days.

[85]    On **February 27, 2015** I went to the Ft. Dix Medical Service for a refill of the Augmentin.  The bottle which was handed to me contained only 2 pills.  Once again, I was off antibiotics while a serious infection persisted in my body.

[86]    On **February 25, 2015** I received a response to the BP-10 (Exhibit:O).  Defendant **Norwood** defended the actions of Defendant Hollingsworth, & he defended the actions of the Ft. Dix Medical Service staff.  Defendant **Norwood** negligently ignored the treatment delays which are clearly outlined here & in my medical records.  He ignored the staff's failures to perform the appropriate diagnostics at the appropriate time, & he ignored their failures to follow-up on abnormalities found on diagnostics (see point 80 above, and Exhibits:E,F,H,M).  Defendant **Norwood** was negligent in his duties

43

by ignoring a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[87]    On **March 5, 2015** I submitted a **BP-11** through my unit counselor (Exhibit:U).

[88]    On **March 16, 2015** I was taken to Princeton Eye & Ear (Lawrenceville, NJ) for an exam.  Unfortunately, the Ft. Dix Medical Service failed to schedule the appointment with Dr. Samir Undavia (the ENT specialist who performed my sinus surgery 12 months previously at the hospital).  I was examined by Dean Drezner, MD. Dr. Drezner did document abnormalities, & he instructed me to continue using the Flonase & the nasal saline spray.  Dr. Drezner stated that it was essential for me to recheck with Dr. Undavia. He advised that this follow-up should occur within 1 month (Exhibit:V). Defendants Sood, Newland, Travers, Hollingsworth, & Norwood were negligent in their duties because I had been consistently complaining of significant sinus disease (which was clearly documented) since May 6, 2014, I was now 12 months out from my hospitalization and initial sinus surgery with Dr. Undavia, & I still had not been re-checked by the surgeon.  Moreover, these **Defendants** were negligent

44

in their failure to follow Dr. Drezner's instructions - the April 2015 recheck with Dr. Undavia never did occur.

[89]   On April 17, 2015 I saw Defendant Sood.  In addition to the chronic sinus & pulmonary problems I had been dealing with, I was now experiencing paresis of my right index finger.  I awoke a few days earlier with an intense tingle/numbness in the joint, & it was quite painful.  Since I've been afflicted by chronic Lyme Disease for approximately 20 years, I was well aware of how my body reacted when the disease flared (which it tends to do when I'm stressed).  This intense tingle & joint pareses is something that I've experienced many times before.  And there could be no doubt that my chronic Lyme Disease was no longer quiescent.

When Defendant Sood examined me, & when I explained to him details of paresis I had experienced in the past because of Lyme Disease (including paralysis of my right knee, paresis of my left knee & elbow, & frequent joint pain), he paused & then commented,

> "I don't know anything about Lyme Disease
> causing joint problems like that."

Defendant Sood refused to put me on a course of antibiotics, & he negligently ignored the fact that MDC Brooklyn placed me on 'chronic care' when I entered the BOP/Federal system, because I have chronic Lyme Disease.

45

In addition, on April 17, 2015 Defendant Sood showed that he was not well attuned to my chronic sinus & pulmonary problems. When we discussed the pulmonologist, Defendant Sood asked me,

"What did the pulmonologist do?"

And when we discussed the ENT, Defendant Sood asked me,

"What did the ENT do?"

Those exams were done the previous month, & Defendant Sood had more than enough time to review my medical records. He should have known what the specialists did. And he should have known that I was using hypertonic saline nasal spray because Defendant Mello & Dr. Drezner instructed me to do so. Instead, Defendant Sood instructed me to stop using the nasal spray (Exhibit:W).

Also that day, Defendant Sood once again deliberately ignored my concerns of, "Right nasal obstruction, pain right face in maxillary region, & fresh blood from nose" (Exhibit:W). He knew about the chronicity, he knew that the CT scan from January 22, 2015 showed significant pathology & evidence of obstruction (Exhibit:N), & he knew that Dr. Drezner had advised that I needed to recheck with my surgeon, Dr. Undavia, the very same month (Exhibit:V). That April 2015 recheck never did occur.

[90]    On **May 6, 2015** I saw **Defendant Sood,** after reporting to sick-call, two days previously, that there was no improvement in my right index finger paresis, & that I was 3 weeks overdue for my recheck with Dr. Undavia.  On this day, **Defendant Sood** appeared to be perplexed by the pareses which continued to affect my right index finger.  As he was examining my finger, he looked up at me and accused me of intentionally not taking the Ibuprofen.  And when I reminded **Defendant Sood** that I wasn't on antibiotics for chronic Lyme Disease, & that for me in the past the paresis has always quickly resolved with a course of antibiotics, **Defendant Sood** said,

"You're faking it,
you don't have Lyme Disease."

Once again, **Defendant Sood** was negligent in his duties, as I was sent back to my housing unit without proper/timely medical care.  And the recheck with Dr. Undavia was now 2 months overdue (Exhibit:X).

[91]    On **June 3, 2015** I returned to Princeton Eye & Ear for a recheck exam.  Once again, **Defendants Sood, Newland, Travers, Hollingsworth, & Norw**ood were negligent in their duties.  They failed to schedule my appointment with Dr. Undavia - he wasn't in

47

the office.  I was seen by Chetan S. Shah, MD (Exhibit:Y).
Dr. Shah advised that I continue using the Flonase & the nasal
rinse.  He, & his staff, again insisted that it was essential for
me to recheck with Dr. Undavia.  And upon returning to the Ft. Dix
Medical Service,I clearly voiced my concern to Defendant Hoey that,
for the second time, the Ft. Dix Medical Service had negligently
failed to schedule my appointment at Princeton Eye & Ear with the
ENT who performed my sinus surgery in March 2014 - Dr. Undavia.
I also clearly voiced this concern to the two BOP officers who
escorted me on the medical trip.  Still, somehow this important,
& legitimate, concern wasn't mentioned in the notes for the medical
trip return encounter.  Instead Defendant Hoey reported, "Inmate
walked into Health Services without complaints returning from a
medical trip to see ENT" (Exhibit:Z).

[92]   On June 25, 2015 I was examined again by Defendant Sood
(Exhibit:AA).  I was still experiencing pain & paresis in my right
index finger.  In addition, the pain had extended to my left elbow,
& I was now experiencing a 'brain fogginess' & was having difficulty
concentrating.  I explained to Defendant Sood that Dr. Ron Wilson

48

(Denton, Texas) had treated me for the same CNS signs in December 2012 (I was on Doxycycline for over 13 months).  Defendant Sood negligently ignored my comments about the CNS signs.  He again appeared perplexed & he continued to insinuate that there must have been an exacerbating factor such as weight lifting (this was simply not true - I don't lift weights & there was no exacerbating factor other than a small spirochete bacterium, Borrelia burgdorferi). Once again, I was not placed on a course of antibiotics for the chronic Lyme Disease.

In addition, on June 25, 2015 I discussed my chronic sinus disease with Defendant Sood.  I clearly explained to Defendant Sood that I was very disappointed that he had not scheduled my recheck with Dr. Undavia.  And I reminded Defendant Sood that the severe congestion, sinus pressure & headaches, & drainage were still present, & that I was very uncomfortable.  But once again, when I left Defendant Sood's exam room that day, nothing had been done to allev- iate my suffering.

[93]    On August 21, 2015 I was taken to Princeton Eye & Ear for an exam.  Once again, Defendants Sood, Newland, Travers, Hollingsworth, & Norwood were negligent in their duties & failed

49

to schedule my recheck specifically with Dr. Undavia.  This was the third such blunder since my BP-9 & BP-10 were filed.  I was examined by another staff physician.  He stated that it was essential for me to recheck with my surgeon, Dr. Undavia.  He also prescribed Ciprofloxacin (Exhibit:BB), but Defendants Sood & Newland negligently failed to give me the antibiotic.

[94]    Also on **August 21, 2015** I submitted a written cop-out to the Ft. Dix Medical Service HSA (Exhibit:CC).  In that document, I again complained that my appointments were not being appropriately scheduled.  And I again requested that I be scheduled with Dr. Undavia.  Defendant Wilk responded,

> "There is no guarantee you will see
> the same doctor who performed your surgery."

Defendant Wilk knew very well that Dr. Drezner, Dr. Shah, and the staff at Princeton Eye & Ear were directing, over & over, that I needed to recheck with my surgeon, Dr. Undavia.  Still, **Defendant Wilk** negligently chose to leave to chance which MD I would see, instead of simply picking up the phone & calling Princeton Eye & Ear to request an appointment specifically with Dr. Undavia.  The **Defendants** intentionally continued to interrupt a prescribed plan of treatment, as shown over and over in the medical notes from Princeton Eye & Ear.

50

[95]   On or about September 7, 2015 I received a response from the BOP Central Office to the BP-11 (Exhibit:U). Defendant Connors defended the actions of his subordinates. In an attempt at damage control, Defendants Connors, Schult, & Carvajal negligently ignored the fact that Defendant Sood misdiagnosed my illness. Defendants Connors, Schult, & Carvajal ignored the treatment delays which are clearly outlined here & in my medical notes. And these Defendants ignored the Ft. Dix Medical Staff's failures to perform the appropriate diagnostics at the appropriate times, and they ignored the failures of Defendants Sood, Newland, Mello, Tyas, & Syjontian to follow-up on abnormalities found on diagnostics. Defendant Connors is quick to point out that I was seen by an ENT, but Defendants Connors, Schult, & Carvajal negligently ignored the very real fact that it took far too long for me to recheck with my surgeon (in fact, on the day Defendant Connors signed the BP-11 response [September 2, 2015] I had not yet seen Dr. Undavia). And these Defendants negligently ignored the fact that Defendants Newland, Sood, Travers, Wilk, Hollingsworth, Ortiz, & Norwood all negligently failed, time after time, to appropriately schedule my appointments with Dr. Undavia. Defendants Connors, Schult, Carvajal, Newland, Travers, Wilk, Hollingsworth, Ortiz, & Norwood were all negligent

51

in their duties by ignoring a clear pattern of failures to properly treat my serious illness (before & after my hospitalization) in a manner which meets current & acceptable medical standards.

[96]  On September 15, 2015 I was examined by Defendant Sood. Once again, we discussed my ailments - the chronic sinus disease, as well as the chronic Lyme Disease.  My clinical signs had not changed, & I had yet to recheck with Dr. Undavia.  Only one change was made to my treatment - Defendant Sood discontinued the Ranitidine (the acid-blocker which he prescribed to me in March 2014 when he misdiagnosed my septic sinus infection as chronic espohageal reflux disease).  Defendant Sood had negligently prescribed an unnecessary medication to me for 18 months (Exhibit:DD).

[97] On **November 9, 2015** I was taken to Princeton Eye & Ear.  For the fourth consecutive time since **March 16, 2015** the Ft. Dix Medical Service & the **Defendants** negligently failed to schedule my appointment with Dr. Undavia.  I was seen again by Dean Drezner, MD.  Dr. Drezner once again stated that Alexis, "Needs to F/u with Dr. Undavia who did the first surgery to see if additional surgery is needed" (Exhibit:FF).

52

[98]   On **November 25, 2015** I was examined by a new MD, Dr. Carl Sceusa.   Dr. Sceusa & I had a long conversation about my ailments. He agreed that my request to have my appointments at Princeton Eye & Ear scheduled with Dr. Undavia was reasonable.   He also agreed that based upon my history, clinical signs (joint paresis/paralysis & pain), previous diagnostics (extremely high Lyme IgG & IgM titres at the time of my diagnosis by Ronald Chodosh MD, in Ossining NY), & response to therapy for Lyme Disease, it was quite certain that I did infact have chronic Lyme Disease.   And when I explained that my Las Vegas MD (Dr. Tony Gumina – Family Tree Medical) had treated me for chronic Lyme Disease for approximately 15 years, Dr. Sceusa listened attentively instead of accusing me of "Faking it," as Defendant Sood did.

I should also mention here that when I was presented the plea agreement for my criminal case, I agreed to sign/plea guilty only if the Feds guaranteed that I would receive proper treatment for chronic Lyme Disease.   This was obviously very important to me (Lyme Disease has caused havoc in my body, & I have found it very difficult to find MD's who are knowledgeable about Lyme Disease). The prosecution agreed to this condition (my NY attorney, Dave Hoovler, can verify this).   Unfortunately, Defendant Sood

negligently failed to treat my chronic Lyme Disease appropriately. And this failure is a clear breach of the agreement which the prosecution & I have in place.

By the time Dr. Sceusa examined me on November 25, 2015, the clinical signs I was experiencing as a result of chronic Lyme Disease had resolved. The Borrelia was quiescent. At that point, Dr. Sceusa corrected the medical record - he added Lyme Disease (chronic) once again to my Axis III Assessment (Exhibit:GG). Defendant Sood, at some point, intentionally doctored my medical record, removing Lyme Disease entirely from the record.

I have included here, the medical records from February 6, 2014 (from MDC Brooklyn, Exhibit:HH), & the March 4, 2014 Inmate Intra-system Transfer (for my transfer from MDC Brooklyn to FCI Ft. Dix, Exhibit:II). These documents clearly show that Lyme Disease chronic was listed as an ailment for me (on the Axis III Assessment), & that I was being treated for chronic Lyme Disease, before arriving at Ft. Dix. I have also included the Health Problems list which was generated on October 30, 2014 (Exhibit:JJ). This document clearly shows that Lyme Disease chronic was listed as an ailment for me (on Axis III) while I was here at Ft. Dix.

54

[99] On **February 11, 2016** I was finally examined by Dr. Undavia. This was the first time since my hospitalization, a long 22 months prior, where I was rechecked by my surgeon. Dr. Undavia expressed his concern that I had not been brought in for any post-operative rechecks in 2014. He stated that this after-care was essential in order to minimize scar tissue formation.

Dr. Undavia performed a minor procedure inside my right nostril to remove scar tissue. His medical record states, "Synechia were noted from the posterior septum to inferior turbinate. Synechia were incised with a 15 blade scapel" (Exhibit:LL).

Dr. Undavia stated that he believed the synechia (scar tissue/ adhesions) were the cause of my discomfort. He commented that I, "Should notice a big difference now," after removal of the adhesions. He ordered a nasal/sinus CT scan & directed that I recheck with him immediately upon its completion (Exhibit:LL).

[100] On **April 6, 2016** I had a CT scan done of my sinus at Ft. Dix. The radiology report, written by Charles Muchnak MD clearly shows evidence of right Maxillary sinus pathology (Exhibit:MM). This scan did not indicate obstruction, it clearly did reveal "Diffuse mucosal thickening right maxillary sinus," however.

[101]    On **September 12, 2016,** after waiting over 5 months for my post-CT scan recheck with Dr. Undavia, I submitted a cop-out to **Defendant Wilk** (Exhibit:NN).  I clearly voiced my concern that my serious medical needs weren't being addressed in a timely manner. And I then continued to wait, as Defendants **Sood, Newland, Wilk, Ortiz, Norwood, Connors, Schult, Carvajal, & Haczynski** were clearly in no hurry to arrange for the second surgery.  I didn't recheck with Dr. Undavia to make those arrangements until **December 1, 2016 –** 10 long months after my **February 11, 2016** appointment.

[102]    On **December 1, 2016** I was again examined by Dr. Undavia (Exhibit:OO).  After reviewing the CT scan from **April 6, 2016,** & after examining my nasal cavity, Dr. Undavia & I discussed the option of pursuing a second sinus surgery.  We discussed the pros & cons of such a procedure.  Concerns about additional scarring were discussed at length – we were both concerned that I had not been brought in to do the routine post-operative rechecks in **2014.** If there was a repeat of that failure, there would be even further scarring with a second surgery.  We also discussed the severity of my symptoms – the severe congestion, sinus pressure, headaches,

56

fatigue, inability to sleep well, prolonged & frequent nose bleeding, & the stress & anxiety. These clinical symptoms had plagued me for 31 months at the time of this discussion (and eventually 57 months altogether, as I'll continue to outline here).

It was during this appointment when Dr. Undavia recommended that I should have a second sinus surgery, in order to alleviate my suffering. Upon hearing this recommendation, I began to realize that my condition was far more serious than I previously thought.

[103] On **March 9, 2017** I was taken to Princeton Eye & Ear for the pre-operative office call (Exhibit:PP). Unfortunately, for the 5th time in 7 visits, **Defendants Sood, Newland, Foster-Turner, Haczynski, Wilk, Ortiz, Norwood, Connors, Schult, & Carvajal** negligently failed to schedule my appointment with Dr. Undavia, again interrupting a pre-scribed plan of treatment, neglecting my serious medical needs.

I was seen by Aleen Lee MD, who advised that I needed to see Dr. Undavia for my pre operative visit.

[104] On **April 27, 2017** I saw Dr. Undavia for my pre-operative visit (Exhibit:QQ). Dr. Undavia scheduled me for a second sinus surgery. And he prescribed Prednisone (an anti-inflammatory corticosteroid), & Keflex (an antibiotic).

[105]  On **May 4, 2017** I was taken to Saint Francis Medical Center for sinus surgery (Exhibit:D).  Dr. Undavia clearly states in his surgery report that I "Had endoscopic sinus surgery, septoplasty & inferior turbinate reduction with me a few years ago.  He was unable to follow up.  Postoperatively, he developed significant scar banding & recurrence of nasal polyps."  Dr. Undavia also informed me on **February 11, 2016** in his Lawrenceville officethat it's absolutely essential (for surgical procedures like the one I had on **April 27, 2014**) for the patient (me) to recheck with him early & often post-operatively, in order to avoid such scarring.

I was, infact, able to follow up.  Unfortunately, as I've shown here in my complaint - Defendants **Sood, Newland, Tyas, Mello, Syjongtian, Travers, Wilk, & Hollingsworth** negligently failed to arrange for my proper follow up with Dr. Undavia.  And **Defendants Hollingsworth, Ortiz, Travers, Wilk, Norwood, Connors, Haczynski, Carvajal, & Schult** were busy attempting damage control, which only negligently delayed proper medical/surgical care further.

Dr. Undavia also comments that I "Forgot to bring his [my] CT.  Because of this, I felt it was difficult to perform the operation."  Once again, the above named Defendants negligently failed to provide a specialist with necessary diagnostic test results.

58

This resulted in my surgery being an, "Extremely difficult case." In fact, when I read Dr. Undavia's surgery report, I very much got the impression that, because he wasn't given my most recent CT at the time of surgery, he contemplated cancelling/re-scheduling my surgery (Exhibit:D).

Intra-operatively, Dr. Undavia encountered extensive scar tissue formation. And this scarring was a direct result of the negligence of the Defendants. Defendants Syjongtain & Sood were clearly negligent in their delays in providing aggressive treatment which meets acceptable & current medical standards. Defendant Sood misdiagnosed my sepsis as Esophageal Reflux Disease, chronic. No corticosteroids were administered to me, no IV antibiotics were administered, & my hospitalization was delayed unnecessarily. This delay was medically negligent because of the fact that my condition was clearly worsening rapidly. Still, with this knowledge, & with the full knowledge that Ft. Dix had no MD or PA available Friday March 21, 2014 after 3 PM, Saturday March 22, 2014, Sunday March 23, 2014, and Monday March 24, 2014 until 6 AM, I was sent back to my housing unit ill. I faced a period of 63 hours during which I could not receive adequate medical care. Moreover, when my condition

59

became critical, at approximately 4 AM on **Saturday March 22, 2014,** **Defendant John Doe #1** negligently failed to call an ambulance. Instead, approximately 7 hours later, I was sent to the hospital ER by BOP van.  This delayed my receiving critical IV treatments until arrival at the hospital, approximately Noon that afternoon – a delay of approximately 7.5 hours.  These above deliberate delays allowed the sepsis far too much time to ravage my lungs & body. Irreparable harm was done to my body as a result.

Dr. Undavia also noted in the surgery report, "I was unable to see the opening of the maxillary sinus," and he went on to report, "The maxillary sinus antrum was then probed.  There was no opening. A surgical opening using a ball tipped seeker probe was made.  Then, thick purulent material was expressed from this area."  And he notes that, "The ethmoid air cells had extensive scar tissue," (Exhibit:D). These significant changes are proof that my complaints to the Defendants, month after month for a period of 3 years, were genuine. Unfortunately, **Defendants Tyas, Mello, Syjongtian, Sood, Newland, Wilk, Travers, Hollingsworth, Ortiz, Norwood, Connors, Schult, Carvajal, & Haczynski**   were negligent in their duties.  The constant treatment delays, plus negligence & incompetence, lead directly to me experiencing an enormous amount of pain & suffering since **March 19, 2014.**

60

For 3 years, I lived with a pus-filled right maxillary sinus. In no way does this level of care meet current, acceptable, standards of care. I remember saying to **Defendant Travers** when he called me to medical to discuss my BP-9, "I may be an inmate, but I'm still a human being." Quite obviously, I didn't receive anywhere near the same level of care I would have received if I were not incarcerated.

[106] When I awoke in the recovery room on **May 4, 2017** Dr. Undavia came in to speak with me. He informed me that the right maxillary sinus was completely obstructed, and that upon creating a surgical opening he found that the sinus was, "Filled with insupated pus." For me, that comment was a game-changer. At that moment, I was made aware of the existence of that injury. There had been <u>no</u> prior dis-cussions with anybody (Dr. Undavia, **Defendants Sood, Syjongtian, Travers, Wilk, Tyas, Mello,** or **Hoey)** about the sinus being fully obstructed and pus-filled. And certainly, I could not know of this injury until <u>after</u> the surgery. Dr. Undavia did also mention that he encountered, "Extensive scar tissue." He stated with confidence that by opening the obstructed sinus & removing the pus, I would soon feel better. The scar tissue, he said, was a "Permanent change."

61

[107] Both the **2017** uncontrolled infection, & the **2017** surgical procedure, resulted in damage(s) to my body.  The infection went intentionally untreated, in part because of the Ft. Dix Medical Department's policy to avoid prescribing antibiotics, & in part as retaliation against Alexis (in **2016** EMT Gibb, who was sympathetic to my plight, informed me that the Ft. Dix Medical Dep't staff felt animosity towards me because they "Took exception to my opinion(s) regarding my medical care and to my medical knowledge").


[108] On **December 8, 2017** I received the thoracic surgery report from St. Francis Medical Center.  I had attempted previously (on numerous occasions, since **2014**) to obtain this report, but was not successful (Exhibit:ZZ).  And the Ft. Dix Medical Dep't intentionally withheld this report from me in **2014/2015** when I received their medical records.

I was shocked when I read Dr. Shariff's surgery report!  And its contents were a game changer for me, since nobody ever informed me that my lungs were filled with multiple golf-ball sized abscesses (Exhibit:C, & Points 56-57 above).  At that moment of reading the thoracic surgery report, I became aware of the existence of this serious injury.  **Defendant Sood** had only mentioned to me that my pulmonary illness was the result of pleural effusion, which is entirely different than pulmonary abscesses (according to the American Lung Association, pulmonary abscesses, when accompanied with underlying disease [such as sepsis, or chronic Lyme Disease], have mortality rates as high as 75%).

62

[109] The Ft. Dix Medical Dep't/BOP has commented that I've made no recent complaints that prison officials or medical staff have treated me improperly or prevented me from receiving treatment, including re-checks with Dr. Undavia.  This comment is simply not accurate.  The following timeline (in addition to this Background) will show that my comments & complaints have been complete, honest, & very consistent since **March 2014,** & they continue to this very day:

   (A)   **October 6, 2017** - The BOP NE Regional Office was notified via an SF-95/Claim for Damages (Exhibit:VV).

   (B)   **December 17, 2017** - Alexis mailed the Background to the BOP NE Regional Office (Exhibit: 4 ).

   (C)   **March 27, 2018** - Alexis submitted a cop-out to the Ft. Dix Medical HSA/**Defendant Wilk** (Exhibit: 1 ).

   (D)   **May 2, 2018** - Alexis submitted a second cop-out to the Ft. Dix Medical HSA/**Defendant Wilk** (Exhibit: 2 ).

   (E)   **May 16, 2018** - Alexis notified the FBOP Office of Internal Affairs of his plight, & of the Bivens (Docket 18-cv-02099-RBK-KMW) (Alexis was unable to copy this letter because the copy machines were not available.  A copy will be provided to the Court once it's obtained during Discovery).

   (F)   **May 30, 2018** - Alexis was notified by the inmate Tru-Links computer system that his already approved **June 2018** recheck with Dr. Undavia was disapproved & would not be scheduled (please see Point 110 below).

63

(G)   **June 27, 2018** - Alexis notified the BOP NE Regional Office.

(H)   **July 23, 2018** - Alexis notified BOP Director Hugh Hurwitz (Exhibit:TT).

(I)   **August 11, 2018** - Alexis notified Senator Cory A. Booker of his plight (Exhibit: 3 ) (Please see Point 111 below).

[110] On **May 30, 2018** I was notified through the inmate Tru-Links computer system that my **June 2018** recheck with Dr. Undavia was disapproved & would not be scheduled.   The notification stated:

> "The consultation request submitted by Sood, Ravi MD on 11/21/17 for Otolaryngology, ENT follow up was Disapproved on 5/30/18. Your Sinusitis has been addressed previously by the Ear Nose & Throat subspecialist. Consequently, this consult is not medically necessary at this time."

This recheck was already approved last Summer, after my **June 15, 2017** post-operative exam with Dr. Undavia (this was posted on the same Tru-Links, weeks after **June 15th**). At that time, Dr. Undavia documented abnormalities & symptoms of "Nasal obstruction & facial pressure," & he clearly recommended that I, "Follow up in 1 year" (Exhibit:UU).   Dr. Undavia has <u>not</u> "Resolved" the Chronic Sinusitis in his medical record - it's still an <u>active medical problem</u> which needs his expert medical attention (Exhibit:UU).

64

The **May 30, 2018** decision by **Defendants Schult, Carvajal, Haczynski, Wilk, Turner-Foster, Connors, Norwood, Ortiz, & John/ Jane Does** unknown to cancel an already approved recheck just days after I notified the BOP that I filed a lawsuit in Camden District Court, is clearly intentional retaliation against me for exercising my 1st & 5th Amendment Rights. And clearly this action results in additional treatment delays.

The **Defendants** have claimed that I, "Had a post-surgical follow-up on **June 15, 2017**, at which time it was noted his condition had resolved," (Exhibit: 3 ). But there can be no doubt that this delay was not motivated by any medical factors (please see Point 111 below).

[111] On **August 11, 2018** I notified Senator Cory A. Booker of my plight. On **September 4, 2018**, **Defendant Ortiz** responded to Senator Booker's contact with the BOP, saying that "It was noted his [Alexis's] condition had resolved," (Exhibit: 3 ). And on **October 24, 2018**, **Defendant Ortiz** again responded to Senator Booker, saying "The ENT's impression was that his problem was resolved and no further intervention [is/was] required," (Exhibit: 3 ).

When you examine Dr. Undavia's medical record from that **June 15, 2017** post-operative recheck (Exhibit:UU), it is quite clear that **Defendant Ortiz** intentionally <u>lied</u> to Senator Booker! Dr. Undavia's notes clearly state:

65

(A)   "Follow up in 1 year."

(B)   "Deviated nasal septum." (a minor problem)

- "Plan:   Resolved"

(C)   "Sinusitis, chronic."

- Followed by a detailed plan/treatment, with absolutely

no comment that this (my major problem) is resolved.

(D)   "Synechia of nasal cavity." (a minor problem)

- "Plan:   Resolved"

As one can easily see, the Sinusitis has not been resolved. And once again a delay which was motivated by non-medical factors, & was obviously very deliberate, has interrupted a prescribed plan of treatment, neglecting my medical needs.

[112] On **July 23, 2018** I wrote to the new BOP Director, Hugh Hurwitz (Exhibit:TT). This letter was sent to him so that he would understand my situation, & so that he would have the opportunity to ensure that I would not loose the continuity of care with my surgeon, after the BOP's intentional decision to ignore my need for continued medical care with Dr. Undavia.

[113] On **July 27, 2018** I finally received all of my medical records from Princeton Eye & Ear. This was after multiple requests over a period of approximately 3 years, & with the help of the New Jersey Board of Medical Examiners (Exhibit: 5 ).

66

[114] The record clearly shows that I have experienced an enormous amount of pain & suffering, & I continue to experience pain and suffering, because of the indifference, and the actions & inactions of **Defendants Sood, Schult, Carvajal, Haczynski, Newland, Turner-Foster, Syjongtian, Connors, Norwood, Hollingsworth, Ortiz, Travers, Wilk, Tyas, Mello, Hoey, Saint Francis Medical Center, Ross, & John Does #**$ \underline{1 \;\; \& \;\; 3} $. These **Defendants** made intentional decisions about the conditions of my confinement/medical care, the conditions put **Plaintiff Alexis** at substantial risk of serious harm, & these **Defendants** didn't take reasonably available measures to abate the harm. By not taking reasonable measures, these **Defendants** caused the **Plaintiff's** injuries.

Because of the permanent nature of the injuries which Alexis has suffered, there's every reason to expect that his pain & suffering will continue in the future, & that he will incur significant future medical expenses. Moreover, the significant disability from which Alexis now suffers raises serious doubt about his ability to practice veterinary medicine, at the level required, in the future.


[115] On **November 30, 2018** I was removed from my 2-man preferred housing into a 12-man room. As I left Counselor Bautista's office he stated that the move was because of my lawsuits. This is clear retaliation against me because of my pursuing my legal rights through the Court.

[116] Needless to say, I fully expect that there be <u>no</u> further retaliation whatsoever against me by these **Defendants**, the BOP, or Fort Dix staff because of my filing of this complaint, or because of my pursuing my legal rights through the Court.

[117] On Thursday May 2, 2019 I was taken to see Dr. Undavia at Princeton Eye & Ear.  This recheck appointment was 11 months over-due because of the continual interruptions of the prescribed plans of treatment by the BOP & Fort Dix staff. Dr. Undavia ordered a different nasal spray, and placed me on Prednisolone (in order to control the inflammation).  The Prednisolone instantly help relieve the pressure & burning sensation, so that I was more comfortable.

Dr. Undavia did have a discussion with me about my having a third surgery, in order to remove additional scar tissue.  Unfortunately, he felt as though this procedure would have to be performed by a Nevada ENT, since I would soon be home/in halfway house.  He would not be able to perform the procedure because of the 11 month delay in my recheck appointment (originally scheduled for June of 2018).

## Relief Requested

WHEREFORE, Plaintiff Vincent P. Alexis respectfully requests the Court to grant the following relief:

A) Issue a declaratory judgement stating that: Medical Neglect/ Negligence by Defendants violated the Plaintiff's rights under the Eighth Amendment to the United States Constitution;

2. Defendant Medical Doctor Ravi Sood's failure to examine & treat Plaintiff for severe Lung & Sinus infections violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

3. Defendant Deborah Schult, Medical Director for the BOP/ DOJ failed to enforce medical treatment for Plaintiff under BOP policies and provide adequate medical care. These actions violated the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

4. Defendants Ravi Sood, Deborah Schult, M.D. Carvajal, Haczynski, Rolando Newland, N. Turner-Foster, Sam Syjongtian, Ian Connors, J.L. Norwood, G. Travers, J. Wilk, P. Tyas, Christina Mello, T. Hoey, Saint Francis Medical Center, William Ross, J. Hollingsworth, David Ortiz, John Doe/Operations Lieutenant, John Doe/Nurse actions in failing to provide adequate medical care for Plaintiff violated, & continue to violate, the Plaintiff's rights under the Eighth Amendment to the United States Constitution.

69

B) Award <u>Compensatory Damages</u> in the following amounts:

1. Two Million Dollars against each Defendant for the physical and emotional injuries substained as a result of the Plaintiff's medical condition;

C) Award <u>Punitive Damages</u> in the following amounts:

1. Two Million Dollars against each Defendant - Ravi Sood, Deborah Schult, M.D. Carvajal, Mr. Haczynski, Rolando Newland, N. Turner-Foster, Sam Syjongtian, Ian Connors, J.L. Norwood, G. Travers, J. Wilk, P. Tyas, Christina Mello, T. Hoey, Saint Francis Medical Center, William Ross, J. Hollingsworth, David Ortiz, John Doe/Operations Lieutenant, & John Doe/Nurse.

D) Grant such relief as it may appear that Plaintiff is entitled.

## Judicial Notice

Plaintiff respectfully requests that the Court issue an injunction ordering Defendants Ravi Sood, Deborah Schult, M.D. Carvajal, Haczynski, Rolando Newland, N. Turner-Foster, Sam Syjongtian, Ian Connors, J.L. Norwood, G. Travers, J. Wilk, P. Tyas, Christina Mello, T. Hoey, Saint Francis Medical Center, William Ross, J. Hollingsworth, David Ortiz, John Doe/Operations Lieutenant, & John Doe/Nurse to pay for any & all future Plaintiff's medical treatments/care which involves (or is related to) his right maxillary sinus disease and his lung disease.

Plaintiff respectfully requests that a declaration & injunction order be placed against Defendant's: 401 K accounts, retirement accounts, trust accounts, saving accounts, checking accounts, real estate holdings, etc., so that Plaintiff's future medical bills (which likely will include at least a third sinus surgery), can be paid for.

Signed under 28 U.S.C. §1746,
Under Penalties of Perjury the Above & the
Following to be True, Correct, & Complete.   Pro-se.

Respectfully Submitted By
Plaintiff

Vincent P. Alexis
19213-052
FCI Fort Dix
Box 2000
J.B. MDL, NJ 08640

CERTIFICATE OF SERVICE

I, Vincent Alexis, hereby certify
that I have sent a copy of this
Amended Complaint
via United States Mail/Postage Prepaid
on this 7th day of May , 2019
to the following:

Clerk of the Court
U.S. District Court
400 Cooper Street
Camden, NJ 08102

U.S. Attorney's Office
400 Cooper Street
Camden, NJ 08102

Vincent P. Alexis

71

Case 1:18-cv-02099-CPO-MJS   Document 11   Filed 05/16/19   Page 72 of 72 PageID: 488

Dr Vincent Alexis
19043-050
FCI Ft. Dix
Box 1000
J.B. MDL, NJ 08640



RECEIVED

MAY 1 3 2019

AT 8:30 _____ M
WILLIAM T. WALSH, CLERK

U.S. District Court
Court Clerk
400 Cooper St
Camden, NJ 08102

