**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

VINCENT P. ALEXIS,

            Plaintiff,

      v.

JEFF SESSIONS, et al.,

         Defendants.

Civ. Nos.   18-2099 (RBK) (KMW)

          18-13464 (RBK) (JS)

         **OPINION**

VINCENT P. ALEXIS,

            Plaintiff,

      v.

UNITED STATES OF AMERICA,

         Defendant.

**ROBERT B. KUGLER, U.S.D.J.**

      Before the Court are Plaintiff's motions to reopen and for leave to amend in the above

matters. (ECF No. 27[1]; *Alexis II*, No. 18-13464, ECF No. 16.)  Plaintiff filed an identical Proposed

Amended Complaint in both matters. (ECF No. 27-2; *Alexis II*, No. 18-13464, ECF No. 17.)  Both

cases address the same underlying set of events, but *Alexis II* is a Federal Tort Claims Act

("FTCA") claim against the United States, while *Alexis I* sued the individual actors.

      The Court had dismissed *Alexis I*, without prejudice, for failure to state a claim, primarily

on statute of limitations grounds. (ECF No. 5.)  In *Alexis II*, Plaintiff had filed a motion to amend

---

[1] For ease of reference, the Court will treat Civil Action No. 18-2099, "*Alexis I*," as the primary case, and Civil Action No. 18-13464, "*Alexis II*," as the secondary case.  The Court will include the case name and docket number for citations to the record in *Alexis II*.

prior to the Court's initial screening, and the Court terminated the matter pending submission of an amended complaint. (*Alexis II*,  No. 18-13464, ECF No. 14.)  For the reasons stated below, the Court will grant Plaintiff's motions to reopen and for leave to amend, and then dismiss the Amended Complaints.

## I.  FACTUAL BACKGROUND

As set forth in the Court's earlier Opinion in *Alexis I*:

> This case arises from Plaintiff's medical treatment while incarcerated at FCI Fort Dix, for his septic sinus infection and chronic Lyme disease.  According to the complaint, Plaintiff became ill with a septic sinus infection on March 19, 2014.  Plaintiff, who holds a doctorate in veterinary medicine, alleges that he sought treatment for the infection, but through a series of misdiagnoses, delays, and refusals to send him to the hospital, his infection remained untreated, until it significantly worsened.
>
> Prison officials ultimately sent Plaintiff to Defendant Saint Francis Medical Center on March 22, 2014, where his diagnostic tests revealed that a bacterial infection had spread through his body.  In order to gain control over the sepsis, hospital physician Dr. Samir Undavia performed sinus surgery to remove the infection sites and establish drainage on March 27, 2014.  Dr. Undavia encountered tremendous inflammation and observed that the "case became very difficult given how much necrotic tissue was everywhere," as a result of the earlier misdiagnoses and delays in Plaintiff's treatment.
>
> While recovering at the hospital, on March 31, 2014, both of Plaintiff's lungs collapsed, requiring hospital staff to install emergency chest tubes.  Plaintiff contends that the staff member negligently positioned the chest tubes, which required a second procedure to reposition those tubes. The repositioning failed and required Plaintiff to undergo major thoracic surgery.  The hospital discharged Plaintiff on May 5, 2014.
>
> According to Plaintiff, from the date of his discharge until September 15, 2015, prison officials and medical staff misdiagnosed his residual sinus issues and Lyme disease, withheld medical documents, and negligently failed to prescribe antibiotics on a number of occasions.  Additionally, Plaintiff takes issue with the staff's failure to schedule some of his post-surgery follow-ups with Dr. Undavia, instead "negligently" scheduling him to meet with other ear, nose, and throat specialists.

In response to those failures, Plaintiff filed his grievances and appeals thereof, on November 6, 2014, November 20, 2014, January 12, 2015, and March 5, 2015, amending his appeal each time to include new alleged failures of prison officials and medical staff. He received a response to each of those appeals on November 17, 2014, January 6, 2015, February 25, 2015, and September 7, 2015, from a number of the Defendant wardens, directors, and administrators, who ultimately concluded that Plaintiff received proper and adequate medical care and treatment and denied the appeals.

Plaintiff finally met with Dr. Undavia for his first post-operative check on November 9, 2015 but contends that prison officials and medical staff unnecessarily delayed two of four subsequent meetings with Dr. Undavia. During those meetings, Dr. Undavia recommended that Plaintiff undergo a second surgery to alleviate his residual sinus and related issues. Dr. Undavia performed the second surgery on May 4, 2017.

Although the second surgery alleviated some of Plaintiffs afflictions, he alleges that he still experiences difficulty draining his sinuses, trouble sleeping, and nosebleeds. Additionally, he experiences significant pain and restrictions on activity, as a result of the thoracotomy after his first sinus surgery.

(ECF No. 5, at 2–4 (citations omitted).)

Plaintiff raised Eighth Amendment deliberate indifference claims, alleging that Defendants refused to provide proper treatment, delayed necessary treatment, prevented him from receiving treatment, or some combination of the three, and corresponding state law claims. The Court dismissed the majority of the complaint on statute of limitations grounds. Additionally, the Court dismissed the claims against Defendants Sessions, Inch, Samuels, Smith, and Santana, as Plaintiff failed to include any allegations against those Defendants. (*Id*. at 6–7.) The Court offered Plaintiff an opportunity to submit an amended complaint to address those issues.

In *Alexis II*, Plaintiff submitted a complaint detailing the same events discussed above but styled it as an FTCA complaint against the United States, rather than suing the individual actors.

The Court had terminated that matter for Plaintiff's failure to provide the Court with his new address. Plaintiff had remedied that failure, but before the Court could complete its initial screening in that case, Plaintiff requested leave to file a motion to amend. The Court granted Plaintiff's request. (*Alexis II*, 18-13464, ECF No. 14.)

Now before the Court are Plaintiff's motions to reopen and for leave to amend. Plaintiff submitted an identical Proposed Amended Complaint (hereinafter "Amended Complaint") in both matters. (ECF No. 27-2; *Alexis II*, No. 18-13464, ECF No. 17.) The Amended Complaint resubmits his claims from the earlier complaints and contains some new allegations related to Plaintiff's medical treatment after 2016. The pleading also contains a section devoted to the statute of limitations.

## II.  STANDARD OF REVIEW

### A.  Standard for *Sua Sponte* Dismissal

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[2] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC*

---

[2] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## B. *Bivens* Actions

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis,* and *Carlson*—represent the only instances in which the Court has approved of an implied damages

---

*Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *see also Malcomb v. McKean*, 535 Fed. App'x 184, 186 (3d Cir. 2013) (finding that the Rule 12(b)(6) standard applies to dismissal of complaint pursuant to 28 U.S.C. § 1915A for failure to state a claim).

remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.  As is relevant in the present case, the Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who is personally involved in the deprivation. *Carlson*, 446 U.S. at 19.

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

### III.    DISCUSSION

#### A.  Sovereign Immunity

As a preliminary matter, Plaintiff asserts *Bivens* claims against the United States, as well as the individual Defendants, both in their official and individual capacities.  To be liable under *Bivens*, a defendant must be a "person."  The Third Circuit has held in *Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979), that sovereign immunity bars *Bivens* claims against the United States and its agents unless the United States explicitly waives its immunity, and accordingly, they are not "persons" amenable to suit under *Bivens*. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

Here, the United States is immune from suit under *Bivens* because it has not explicitly waived sovereign immunity.  Similarly, as the individual Defendants are employees or former employees of FCI Fort Dix, or the Federal Bureau of Prisons, or both, which are federal entities, they are immune from suit, at least in their official capacities.  *See, e.g.*, *Webb v. Desan*, 250 F.

App'x 468, 471 (3d Cir. 2007). Accordingly, the Court will dismiss with prejudice the *Bivens* claims against the United States and the individual Defendants, in their official capacities.

### B. Statute of Limitations

As discussed in the Court's prior Opinion, the Court can raise statute of limitations issues *sua sponte*, at the screening stage. *See Ostuni v. Wa Wa's Mart*, 532 F. App'x 110, 111–12 (3d Cir. 2013) (per curiam) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under § 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.").

Our jurisprudence takes the statute of limitations for a *Bivens* claim from the forum state's personal injury statute. *See Hughes v. Knieblher*, 341 F. App'x 749, 752 (3d Cir. 2009) (per curiam) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 190 (3d Cir. 1993). New Jersey's statute of limitations for personal injury actions is two years. *See* N.J. Stat. § 2A:14–2. "While state law provides the applicable statute of limitations, federal law controls when a *Bivens* claim accrues." *Peguero v. Meyer*, 520 F. App'x 58, 60 (3d Cir. 2013) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a *Bivens* claims accrues when a plaintiff knows of or has reason to know of the injury. *See Hughes*, 341 F. App'x at 752 (citing *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)).

Here, Plaintiff complains of denials and delays in his medical care which may fall under the Eighth Amendment's prohibition against cruel and unusual punishment. For the delay or denial of medical care to rise to a constitutional violation, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires

proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Courts have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.

Courts give deference to prison medical authorities in the diagnosis and treatment of patients and will not "second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (per curiam).

With those principles in mind, this Court dismissed the majority of *Alexis I* as time barred:

> In the present case, determining when Plaintiff knew of or had reason to know of his Eighth Amendment injuries is a somewhat unusual task in light of Plaintiff's advanced medical knowledge. According to Plaintiff, he became ill with a septic sinus infection on March 19, 2014. Plaintiff contends that his symptoms "should have been alarming to any health care professional" and that the prison medical staff should have sent him to the hospital at his request. Instead, he alleges that the staff failed to diagnose and treat him, until his infection worsened, which required him to undergo sinus surgery on March 27, 2014, at Saint Francis Medical Center. During his recovery at the medical center, both of his lungs collapsed, which necessitated a major thoracotomy.
>
> The complaint then alleges, in impressive detail, that Plaintiff notified the prison medical staff of issues arising from his surgeries and pre-existing Lyme disease and then *advised them* of the proper course of medical treatment. For example, on a number of instances, Plaintiff received his medical test results, such as his radiographs,

and alleges that he was able to properly diagnose himself and request the proper treatment.  With his medical knowledge in mind, he explains that on many occasions over approximately eighteen months, until September 15, 2015, the medical staff refused to provide proper treatment, delayed necessary medical treatment, and prevented him from receiving medical treatment.  Plaintiff then faults the medical directors and prison administrators, directors, and wardens for denying his administrative grievances and appeals, and for failing to provide him with the requested relief.

Plaintiff filed those grievances and appeals, on November 6, 2014, November 20, 2014, January 12, 2015, and March 5, 2015, complaining of the denied, delayed, and prevented treatment, in impressive detail.  Thus, at the latest, Plaintiff was aware of his injury and had a complete cause of action as of March 5, 2015, as to his deliberate indifference claims preceding that date. To the extent that exhausting administrative remedies could have tolled the statute of limitations, Plaintiff received a denial to the last of those appeals on September 7, 2015.    Consequently, the statute of limitations required[3] Plaintiff to file a complaint raising those claims by September 7, 2017.

Plaintiff's allegations after filing his last appeal through September 15, 2015, generally pertain to Defendant Sood's refusal to treat a flare-up of Plaintiff's Lyme disease, and the failure of Defendants to schedule a follow-up with Dr. Undavia, who performed the first surgery, instead scheduling Plaintiff to see a different ear nose and throat doctor.  Plaintiff states that he was well-aware of his Lyme disease and the need for a follow-up with Dr. Undavia each time Defendants denied his requests.

Thus, he had a complete cause of action, and the statute of limitations required him to file a complaint as to those claims by September 15, 2017, at the latest.  Accordingly, because Plaintiff did not file the instant complaint until February of 2018, the statute of limitations bars these claims and any claim that arose prior to February of 2016.

(ECF No. 5, at 7–11. (emphasis in original) (citations omitted).)

---

[3] To the extent that the Court could interpret Plaintiff's claims as medical malpractice or ordinary negligence claims, a two-year statute of limitations would also apply to such claims. *See* N.J. Stat. § 2A:14-2; *Montgomery v. DeSimone*, 159 F.3d 120, 126 n. 4 (3d Cir. 1998); *McGrogan v. Till,* 744 A.2d 255, 260 (N.J. Super. Ct. App. Div. 2000), *aff'd as modified*, 771 A.2d 1187 (2001).

In the Amended Complaint, Plaintiff contends that the Court should excuse his late filing because: (1) under the discovery rule, he only discovered the extent of his injuries on December 8, 2017, and (2) because Defendants deliberately withheld his medical records at various times. (ECF No. 27-2, at 47, 76–78.)

More specifically, Plaintiff alleges that he was unaware of the severity of the damage to his lungs until he received his thoracic surgery report, many years later, on December 8, 2017. The report revealed that Plaintiff's lungs had multiple large abscesses.  He contends that unspecified Defendants concealed this report and other medical records for a number of years. (ECF No. 27-2, at 38–39, 47, 77.)  As a result, Plaintiff argues that he had "filed the complaint just eight months after becoming aware of the presence of permanent lung damage," and that the discovery rule renders his first complaint timely. (ECF No. 27-2, at 47.)

Under our jurisprudence, the discovery rule in New Jersey permits a delay of the two-year statute of limitations where a "plaintiff is reasonably unaware that he has suffered an injury or, even though he is aware of the injury, that it was the fault of an identifiable person." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (citing *Caravaggio v. D'Agostini*, 765 A.2d 182, 187 (N.J. 2001)).

The rule postpones accrual until the "injured party discovers, or by exercise of reasonable diligence and intelligence should have discovered[,] that he may have a basis for an actionable claim." *Id.*  Once a potential claimant becomes aware of the injury and that someone was at fault, however, then the statute of limitations begins to run. *See Grunwald v. Bronkesh*, 621 A.2d 459, 463 (N.J. 1993).

Critically, a "plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he

was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Kach v. Hose*, 589 F.3d 626, 635 (3d Cir. 2009)).  Stated differently, the statute of limitations begins to run "even though the full extent of the injury is not then known or predictable."  *Kach*, 589 F.3d at 635.

In the present case, the discovery rule does not change the Court's conclusion that the majority of Plaintiff's claims are untimely.  Although Plaintiff contends that he learned the full extent of his injuries upon receiving the surgery report on December 8, 2017, he was keenly aware that certain Defendants had caused him *some* amount of harm before and shortly after the surgery.

Indeed, Plaintiff became ill with his septic sinus infection on March 19, 2014, and alleges that certain Defendants misdiagnosed him, delayed treatment, or refused to send him to the hospital, or some combination of the three, until his condition significantly worsened. (ECF No. 27-2, at 6–12.)  According to Plaintiff, these failures necessitated numerous medical procedures, including major thoracic surgery, from March 31, 2014, through April 7, 2014.

Consequently, those delays and denials of medical treatment already inflicted an injury on Plaintiff when they caused his condition to worsen.  Similarly, in that sense, the fact that Plaintiff needed multiple procedures at the hospital or major thoracic surgery *at all*, was itself a harm resulting from the failures of those Defendants.

As a result, the Amended Complaint demonstrates that Plaintiff was cognizant that the Defendants in question had violated his rights and that he was harmed in some way, as early as March and April of 2014.  Accordingly, at that point, Plaintiff had a complete cause of action as to those claims, "regardless of . . . any additional" injuries revealed during his thoracic surgery. *See Stephens*, 796 F.3d at 288.  Once again, the statute of limitations begins to run "even though the full extent of the injury is not then known or predictable."  *Kach*, 589 F.3d at 635.

11

In any event, as discussed in the Court's earlier Opinion, Plaintiff filed numerous grievances and appeals from November of 2014 through March of 2015, alleging, in *impressive detail*, that Defendants denied, delayed, and prevented medical treatment, resulting in substantial suffering. (ECF No. 1, at 32, 34, 39, 42; ECF No. 27-4 (containing some of Plaintiff's grievances and appeals)).

For example, in Plaintiff's November 5, 2014, BP-8 grievance he stated: "since March 20, 2014, and currently, I've received grossly negligent medical care.  In addition, my Eighth Amendment Rights have been violated.  As a result, I've experienced unnecessary pain and suffering, and ongoing medical problems." (ECF No. 1-3, at 1.)  He further stated that "immediately upon return from the hospital (& consistently since then) [he] made it clear that [he] had problems that weren't being properly addressed," and that he had contacted Defendant Sood, and other staff members regarding these problems. (*Id*.)  Thereafter, in his administrative appeals in November of 2014, January of 2015, and March of 2015, Plaintiff lists, in remarkable medical detail, all the ways he believed that certain Defendants failed to treat him. (*Id*. at 8–9, 16–17.)

Accordingly, in his own words, Plaintiff had been alleging that Defendants committed negligence, medical malpractice, and violated his Eighth Amendment rights, throughout the administrative grievance process.  The allegation that he only discovered the true extent of his injuries, many years later, does not change the conclusion that he was aware of *some* injuries traceable to the Defendants in question, and had a complete cause of action on March 5, 2015, at the latest, as to the claims preceding that date.

To the extent that exhausting administrative remedies could have tolled the statute of limitations, Plaintiff received a denial to the last of those appeals on September 7, 2015.  *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).  Consequently, the statute of

limitations required  Plaintiff to file a complaint raising those claims by September 7, 2017, at the latest.

Accordingly, because Plaintiff did not file his initial complaint in *Alexis I* until February 8, 2018, the statute of limitations bars any claim that arose prior to February 8, 2016. *Peguero*, 520 F. App'x at 60.  The discovery rule and the allegation that unnamed Defendants concealed his surgery report and other documents do not change that conclusion.  As a result, the Court will grant Plaintiff's motion to reopen and for leave to amend, and then dismiss with prejudice all claims that began to accrue prior to February 8, 2016.

### C.  Rule 8 and the Remaining Claims in *Alexis I*

Although the majority of Plaintiff's claims are time barred, he does allege that some Defendants had violated his rights within two years of filing *Alexis I*, *i.e.*, from February 8, 2016 and onwards. (*See* ECF No. 27-2, at 28–36.)  For the following reasons, the Court will dismiss those claims for failure to comply with Federal Rule of Civil Procedure 8 and for failure to state a claim.

Under Federal Rule of Civil Procedure 8(a):

> (a) A pleading that states a claim for relief must contain[:] (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

"Thus, a *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's . . . right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).  Stated differently, Rule 8 requires a showing that the

plaintiff is entitled to relief in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

In the present case, the potentially timely allegations on pages 28 through 36 fail to directly allege what Plaintiff's claims are against each Defendant and fail to provide fair notice of the grounds on which he intends to rest his claims.  For the most part, these allegations are a collection of "bare conclusions [against the Defendants]. . . which are insufficient as a matter of law to state a claim for relief." *Kaplan v. Holder*, No. 14-1740, 2015 WL 1268203, at *4 (D.N.J. Mar. 18, 2015) (citing *Iqbal*, 556 U.S. at 678).  Additionally, on nearly every occasion, Plaintiff fails to specify which of the many Defendants committed any particular wrong during this time period.

For example, in September of 2016, the Amended Complaint alleges that "the defendant negligently continued to delay in arranging for [his] care with Dr. Undavia – due to disorganization, laziness, cost-savings and retaliation." (ECF No. 27-2, at 29.)  Similarly, in May of 2017, the Complaint alleges that "the defendant negligently failed (on no less than five occasions) to arrange for these vital recheck appointments," and that "the defendant negligently failed to provide a specialist with necessary diagnostic results." (*Id*. at 31.)  Plaintiff also alleges that the decision on "May 30, 2018, by the defendant to cancel an . . . appointment with [his] surgeon," was retaliation for filing a federal lawsuit. (*Id*. at 35.)  Similarly, in June and July of 2019, Plaintiff contends that his new medication "was deliberately withheld from [him] by the defendants." (*Id*. at 38.)

In all of these instances, and in many others, the Amended Complaint fails to specify which Defendant or combination of Defendants committed the alleged wrongs. (*See id*. at 28–36.) Plaintiff also fails to identify how the denials occurred, *i.e.*, under what circumstances a Defendant chose to delay or deny Plaintiff's medical care.  (*Id*.)

14

As a result, the potentially timely claims in the Amended Complaint, in their current form, "would not provide any meaningful opportunity for the Defendants to decipher or answer the vague allegations levied against them." *Koehler*, 2019 WL 1231679, at *3; *see Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss without prejudice the remainder of *Alexis I* under Rule 8 and for failure to state a claim.

The Court will provide Plaintiff with an opportunity to submit another proposed amended complaint that *only* contains claims that began to accrue *after February 8, 2016*. Additionally, in Plaintiff's proposed pleading, he shall: 1) "refrain from repeating allegations, unless absolutely necessary; (2) include allegations about each defendant in a single location rather than scattering the allegations throughout the pleading; (3) refrain from going into detail about every single discussion that may have occurred, unless absolutely relevant to the claims; (4) refrain from discussing" background information or other events that "only have a tangential relation to the underlying claims; (5) refrain from arguing and using conclusive allegations;" (6) refrain from discussing reactions, feelings, conjecture, and thoughts, after each Defendant's actions; and (7) refrain from including citations to case law[4] and other legal authorities. *Mobley v. Wetzel*, No. 14-00035, 2016 WL 11452949, at *1–2 (M.D. Pa. Feb. 11, 2016).

## D. Federal Tort Claims Act Claim in *Alexis II*

With regards to Plaintiff's FTCA claim in *Alexis II*, a plaintiff must present the claim to the appropriate agency within two years of the accrual of the claimant's cause of action. *See* 28 U.S.C. § 2675(a); *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). The agency then has a six-month period within which to settle or deny the claim. *See* 28 U.S.C. § 2675(a). If the agency denies the claim, a claimant then has six months from receiving a notice of final denial

---

[4] Plaintiff may include such authorities in a brief accompanying his motion to amend.

to bring suit in federal court. 28 U.S.C. § 2401(b).  Failure to comply with either the two-year window to submit an administrative claim or the six-month period to file suit renders a claimant's cause of action "forever barred." *See Seiss v. U.S* ., 792 F. Supp. 2d 729, 732 (D.N.J. 2011).

In his Amended Complaint, Plaintiff fails to specify when or if he filed a notice of tort claim with the appropriate agency or whether he received a denial. (ECF No. 27-2.)  After sifting through his exhibits, one exhibit indicates that Plaintiff filed his notice of tort claim on October 6, 2017. (ECF No. 27-4, at 127.)  As discussed above, however, the statute of limitations required Plaintiff to file a complaint raising the majority of his claims—at least the claims he exhausted in his administrative remedies—by September 7, 2017, at the latest.

Since Plaintiff filed his notice of tort claim nearly a month later, on October 6, 2017, he failed to present his claim to the appropriate agency within two years of the accrual of his cause of action. *See* 28 U.S.C. § 2675(a); *White-Squire*, 592 F.3d at 457.  As a result, the Court will grant Plaintiff's motion to reopen and for leave to amend in *Alexis II*, and then dismiss the FTCA claim arising from his grievances as time barred.

If Plaintiff has an FTCA claim that began to accrue within two years of October 6, 2017, he may file a motion to amend and pursue *only* those claims in *Alexis II*.  In his proposed pleading, Plaintiff shall attach copies of his notice of tort claim and any denials he received from the agency in question.

## IV.      CONCLUSION

For the reasons set forth above, in *Alexis I*, the Court will dismiss with prejudice: (1) Plaintiff's *Bivens* claims against the United States; (2) all claims against the individual Defendants, in their official capacities; and (3) all claims that began to accrue prior to February 8, 2016. Additionally, the Court will dismiss without prejudice all remaining claims that began to accrue after February 8, 2016.

In *Alexis II*, the Court will dismiss with prejudice the FTCA claim that encompassed Plaintiff's administrative grievances in 2014 and 2015, as time barred.  If Plaintiff has any claims that began to accrue within two years of October 6, 2017, he may file a motion to amend in accordance with the instructions above.  Finally, because Plaintiff filed an identical Amended Complaint in both cases, the Court will dismiss the duplicative claims in each case.  An appropriate Order follows.

Dated:  February 4,  2021                                              s/Robert B. Kugler
                                                                                   ROBERT B. KUGLER
                                                                                   United States District Judge